**UNITED BENEFIT FIRE INSURANCE COMPANY, Appellant,**

v.

**METROPOLITAN PLUMBING COMPANY.**
Appellee.

No. 5563.

Court of Civil Appeals of Texas.

El Paso.

Dec. 19, 1962.

Rehearing Denied Jan. 23, 1963.

Clinton & Shelton, Lubbock, for appellant.

Peticolas & Stephens, Wayne Windle, El Paso, for appellee.

LANGDON, Chief Justice.

Appellee, Metropolitan Plumbing Company, was a subcontractor in the construction of an addition to the Cooley Elementary School for the El Paso Independent School District, El Paso County, Texas. The prime contractor in such work, D. W. Austin, d/b/a Austin Construction Company, became bankrupt while owing appellee a balance of $3,579.40 for labor and materials furnished the school job under the terms of a lump-sum contract. Appellee sued the contractor's surety, United Benefit Fire Insurance Company, upon a payment bond executed by it as surety for D. W. Austin in compliance with the provisions of the McGregor Act (Article 5160, Vernon's Annotated Texas Civil Statutes, as amended April 27, 1959). In a trial to the court without the interven-

tion of a jury, judgment was awarded appellee for the sum of $3,579.40, as prayed for, and appellant has appealed.

Appellant rests its appeal upon only three points of error, and contends that this case presents but a single question of law for the court to decide, that being whether or not the appellee fully complied with the "Notice" requirements of the statute when appellee undertook to inform appellant of the claim; or, to state the question another way—is substantial compliance with the statute sufficient?

On the other hand, appellee contends that he fully complied with the requirements of the statute; but if he did not, that appellant waived strict compliance therewith so as to preclude it from asserting discharge from liability under the bond.

For the purpose of clarity the appellant will hereafter be referred to as the defendant or surety, and the appellee as plaintiff.

It is the surety's contention that the notice or notices of claim furnished it by plaintiff were insufficient, as a matter of law, to satisfy the strict requirements of the statute, and that plaintiff is thereby precluded from any recovery against defendant, as surety, on the payment bond executed by it in compliance with the statute.

The contract upon which the claim here is based was in writing and was for a lump-sum. It was a direct contract between plaintiff and the prime contractor and called for plaintiff to furnish the plumbing and mechanical work on the Cooley school. There is no dispute concerning the performance of the contract, nor of the amount thereon that remained unpaid. It is admitted that plaintiff, under date of February 28, 1961, did notify the surety by registered mail that the sum of $3,579.40 remained unpaid on the sub-contract; also, that at the instance of the surety plaintiff, under date of March 13, 1961, furnished the surety with a sworn notice of its claim. It is further admitted

that a third notice of the claim was sent to the surety by plaintiff's attorney under date of April 28, 1961, and that such notice was received by appellant about May 1, 1961.

Defendant-surety contends that each of the three notices was in some manner defective; that the first notice was not sworn to; that the second notice did not contain the information requested by defendant and that none of the notices, including the third notice, contained a statement in the language of the statute to the effect that all just and lawful offsets known to plaintiff had been allowed; and further, that none of such notices contained any information showing how much labor or material was furnished by plaintiff month by month during the contract period.

We have been unable to find a case. in which the statute (Article 5160), as amended April 27, 1959, has been construed, and believe this case to be one of first impression. In view of such fact, we deem a more detailed analysis of the statute is required than might otherwise be necessary.

Under the McGregor Act prime contractors on contracts exceeding $2,000 for the construction, alteration or repair of any public buildings or the prosecution or completion of any public work for this state, any department, board or agency thereof; or any municipality of this state, department, board or agency thereof; or of any school district of this state; or of any other governmental or quasi-governmental authority authorized by law to enter into such public works contract, shall be required, before commencing work, to execute two statutory bonds to the governmental authority or authorities for whom the work is to be performed. The bonds required to be furnished are a "Performance Bond" in the amount of the contract conditioned upon the performance of the work, and a "Payment Bond", also in the amount of the contract. The "Performance Bond" shall be solely for the protection of the governmental authority awarding the con-

tract, and the "Payment Bond" solely for the protection of all claimants supplying labor and material in the prosecution of the work provided for in the contract, for the use of each such claimant.

The statute not only specifies the conditions of the bonds that shall be required of prime contractors on public works, but prescribes the time limits within which "notice" of claims thereon must be given, and specifies the form and content of the "Notice" required of the several classes of claimants for perfecting their respective claims against the contractor's payment bond, for labor or material supplied by them in the prosecution of the contract work.

Part B, subdivision (a) of the statute pertains generally to all classes of claimants and specifies the time for filing notices of "Unpaid Bills, other than notices solely for Retainages * * *." It provides that such notice shall be given within 90 days after the 10th day of the month next following each month in which the labor was done or performed or the material was delivered, *for which such claim is made.* Notice of such claims shall be in writing and are required to be sent by certified or registered mail, addressed to the prime contractor at his last known business address, or at his residence, and to the surety or sureties. The statute requires that such notices shall be accompanied by the following:

1. Sworn statement of account *stating in substance* that the amount claimed is just and correct and that all just and lawful offsets, payments and credits known to affiant have been allowed.

2. Amount of any retainages.

3. If claim is based on a written contract, claimant *may at his option* enclose a true copy of such contract.

4. Advising completion or value of partial completion.

Subparagraph (1) subd. (a) of part B relates specifically to content of the notices required of claimants where no written contract exists, and which does not involve a claim for multiple items to be paid for on a lump-sum basis. In such case the notice is required to contain the following:

1. Name of party for whom labor was done or to whom material was delivered.

2. *Approximate* dates of performance and delivery.

3. Description of labor or materials *reasonably identified* and *generally itemized.*

4. Amount due.

5. Copies of invoices or orders, identifying job and destination of delivery.

Subparagraph (2), subd. (a) of part B relates specifically to the content of notices required of claimants in direct contractual relation with the prime contractor where the claim is for multiple items of labor or material to be paid for on a lump-sum basis. In such case the notice is required to contain the following:

1. Name of the party for whom the labor was done or to whom the material was delivered.

2. Amount of contract.

3. Written or oral.

4. Amount claimed.

5. *Approximate* dates of performance or delivery.

6. *Reasonably identifying* description of labor or material.

Other provisions of the statute relate to additional notices required of claimants who do not have a direct contractual relation with the prime contractor; to claims for unpaid retainages; penalty for fraudulent claims and matters of venue and other

matters not applicable to the facts of this case, and which need not be discussed.

■ We consider the statute, as amended in 1959, to be highly remedial in nature. It clearly reflects the intention of the Legislature to change the public policy of the state as previously declared by the Supreme Court in its decisions under the former statute, and to provide a simple, direct method of giving notice and perfecting claims of laborers, materialmen and subcontractors on public works, as stated in the emergency clause of the amendment.

■ It will be noted that many of the requirements of the statute are couched in broad general terms: "stating in substance", "approximate dates", "reasonably identifying", "generally itemized", "may at his option", etc., which terms, by their nature, defy a strict construction; while other requirements of the statute are more specific and indicate that the Legislature intended that some of the provisions should be strictly complied with. The rule of liberal construction, however, applies with full force to remedial statutes, and will be accorded the most comprehensive and liberal construction of which it is susceptible in order to accomplish the legislative purpose. 39 Tex. Jur. 273, sec. 145 (and cases cited).

Of the two bonds required by the statute, we are concerned here only with the "Payment Bond".

Plaintiff contends that the notice actually given satisfies the requirements of the statute; but, regardless of whether such notice was or was not sufficient, that the surety waived strict compliance with the statute and is thereby precluded from asserting its discharge from liability on the payment bond.

■ It is well settled that a right or privilege given by statute may be waived or surrendered, in whole or in part, by the party to whom or for whose benefit it is given, if he does not thereby destroy the rights and benefits conferred upon or flowing to another in or from the statute or other legal or equitable source.

Assuming, for purpose of this opinion only, that the notice actually given by plaintiff was insufficient to meet and satisfy the requirements of the statute—did the surety, by virtue of its acts and conduct, waive strict compliance on the part of the plaintiff with the notice requirements of the statute, so as to preclude the surety from asserting its discharge?

■ It has heretofore been noted that plaintiff sent, and appellant received, three separate notices relating to plaintiff's claim for the balance due under the contract. The first notice, under date of February 28, 1961, from the standpoint of timeliness, was given and received within time limitations sufficient under the statute to permit, if necessary, the inclusion of any unpaid claim for labor performed or material delivered subsequent to October 31, 1960. Under the statute, if the claim asserted by the plaintiff included any labor performed or material delivered during the month of November, 1960 (other than for retainages), notice of such claim was required to be given within 90 days after the 10th day of the month next following. Thus, by our calculations, plaintiff had until March 10, 1961, or 90 days from and after December 10, 1960, within which to give notice of its claim, even if such claim did, in fact, include labor or material furnished during the month of November, 1960, as well as subsequent months.

Prior to the filing of any claim, the prime contractor had paid plaintiff $8,000.00 of the contract price, and it is apparent from the record before us that this sum exceeded the value of the labor performed and material delivered up to November 1, 1960. We have concluded, therefore, that plaintiff's notice of February 28, 1961 was actually given and received by the surety before the time (allowed by the statute) for the giving of a proper notice had expired.

The notice of February 28, 1961 was not sworn to as required by the statute and, in

our opinion, failed in other respects to meet the requirements of the statute, if strictly construed. It was in writing however, and was sent to both the prime contractor and to the surety by registered mail. Upon receipt of such notice the surety wrote plaintiff, on March 8, 1961, under the letterhead "United Benefit Fire Insurance Company", as follows:

"Metropolitan Plumbing Co.
"P. O. Box 3488–Station A
"El Paso, Texas

"Re: Claim No. 16395
"D/A 2/6/61
"Policy No. 853757
"Insured: Austin Construction Co.

"Gentlemen:

"This will acknowledge your claim for material and/or labor in regard to the Cooley School Addition.

"Please be advised that the bonding company has knowledge of their claim and is making a complete investigation and audit of this matter.

"We shall appraise you of our position when such investigation and audit is completed. We anticipate that this will at least take thirty days.

"Very truly yours,
"/s/ Gene Cook
Gene Cook"

"GC:HP
"CC: J. C. Hadsell

■ Admittedly the surety is not required to protest or object to an act or omission on the part of an obligee which operates to discharge the surety from liability, and the fact that a surety remains passive or silent after learning of such an act or omission on the part of the obligee does not constitute such acquiescence or consent as to preclude the surety from asserting the discharge. Nevertheless, a defective or improper notice, made before the time for the giving of proper notice has expired, may be held sufficient in the absence of some statutory prohibition, when the notice, by affirmative acts and conduct, creates the impression that the notice given is adequate; the ground most frequently relied upon by the cases being that the notifier has been lulled into a sense of security concerning the sufficiency of his notification and was thus led into failure to give another notification within the time prescribed by the statute. Acts most frequently held to constitute such grounds have arisen in cases where, in addition to the failure to object, there is—on the part of the noticee—a promise to act, or action, in response to the defective notification. 2 Merrill on Notice 412, ¶ 890.

■ In the case at hand, plaintiff alleged that the surety had full notice of plaintiff's claim and, after having received the notice of February 28, 1961, waived any further notice under the statute by its letter of March 8, 1961, quoted above. The letter itself constitutes a recognition, on the part of the surety, of the continued existence of the relationship; it not only acknowledges receipt of plaintiff's claim, but states "the bonding company has knowledge of their claim and is making a complete investigation and audit of the matter". In addition, the surety promises future action on the claim when the investigation and audit is completed, which it anticipates "will at least take thirty days". The letter contained no hint that the notice actually given was insufficient or defective, and in this case the surety's failure to object is clearly coupled with *a promise to act, or action, in response to the defective notification.*

The surety contends that the second notice, although sworn to by plaintiff, was also insufficient because it did not contain all the information requested by the surety. Plaintiff sent its second notice of claim to the surety on March 13, 1961, in response to a letter dated March 9, 1961, written to it by Lyle Adjustment Company on behalf of the surety, in which the adjustment company undertook to *advise the plaintiff* re-

garding its claim and to "suggest" that plaintiff follow certain steps, enumerated in the letter, respecting such claim. While we deem it unnecessary to reproduce the letter, we have carefully examined its contents and have concluded that even if the plaintiff had complied with every detail of the enumerated suggestions, such notice still would have been insufficient to meet all requirements of the statute. Our view of the matter is that such letter, with its accompanying instructions (varying as they did from the requirements of the statute) was merely another indication on the part of the surety that notification would not be exacted according to the governing provisions of the statute. We believe, however, that plaintiff's second notice was sufficient to constitute at least substantial compliance with the instructions contained in the letter.

From what we have said it follows that we are of the opinion that the surety was given actual notice of plaintiff's claim before the time for the giving of such notice had expired, and that the surety, by its own affirmative acts and conduct, waived any ground of discharge it might otherwise have acquired by reason of any failure on the part of the plaintiff to thereafter give other notice or notices of the same claim in the manner required by the statute.

In the event we are found to be in error in holding that the surety waived the statutory notice required by the governing provisions of the Act; the next question presented by this appeal (assuming there was no waiver on the part of the surety, and that the first two notices were insufficient to satisfy the requirements of the statute) is whether or not the third notice sent by registered mail to the surety on April 28, 1961, and received by it on or about May 1, 1961, was sufficient to satisfy the requirements of the statute.

■■ Since it is undisputed that plaintiff's claim is based upon a written contract for multiple items of labor or materials to be paid for on a lump-sum basis, wherein plaintiff was in direct contractual relation with the prime contractor, we are of the opinion that the claim (with respect to the contents of the notice required of such claimants) is governed by the provisions of subparagraph (2) subd. (a) of part B of the statute. We have compared the contents of the notice given by plaintiff on April 28, 1961 with the requirements of said subparagraph (2), set forth earlier in this opinion, and believe that each and every requirement thereof has been fully satisfied.

The notice states that the claimant has furnished labor and material in the prosecution of work provided for in a certain contract between D. W. Austin and the El Paso Independent School District; that the claimant has not been paid in full therefor and that the claim remains unpaid; that the name of the party for whom the labor was performed and the material was delivered was and is D. W. Austin, d/b/a Austin Construction Company; that the amount of the contract was and is $10,677.00 plus authorized changes and additions in the sum of $902.40; that the contract was and is written (a copy thereof being attached); that the amount claimed is $3,579.40; that the *approximate* dates of performance of labor and delivery of materials are from December 1, 1960 to February 1, 1961; that a *reasonably identifying* description of said labor and material is as follows: "The setting and installation of the fixtures and the providing of the fixtures consisting of lavatories, bowls and water fountains in the Cooley Elementary School".

We are also of the opinion that part B, subdivision (a) of the statute was satisfied by the notice, at least in the following respects: The notice was in writing and was sent by registered mail, addressed to the prime contractor at his last known business address and to the surety; it contained a statement that the contract had been completed and that the amount claimed included all retainage and retainages applicable to the account under the terms of the contract; and, as previously mentioned, a copy of the contract was enclosed. In addition,

850

the notice of claim was signed by G. W. Hancock in his capacity as a general partner in plaintiff company, and was accompanied by the following statement of account, sworn to and subscribed by the same G. W. Hancock:

"STATEMENT OF ACCOUNT

| | |
|---|---|
| "Original contract | $ 10,677.00 |
| Authorized Changes and Additions, dated November 22, 1960 | 902.40 |
| Total Adjusted Contract Price | $ 11,579.40 |
| Less: | |
| Payment received Nov. 28, 1960 — $4,000.00 | |
| Payment received Dec. 12, 1960 — 4,000.00 | 8,000.00 |
| Balance Due on Completed Contract | $ 3,579.40 " |

The statute requires that affiant state only "in substance" that the amount claimed is just and correct and that all lawful offsets, payments and credits known to affiant have been allowed. The exact language of the statute is not required. We have examined plaintiff's affidavit and have concluded that the language used therein, while not identical to that of the statute, is to the same effect, and that it is more than sufficient to meet the requirements of the statute.

While it is true that plaintiff, during the performance of the contract, submitted a number of "estimates" which tend to show that the entire contract was substantially completed prior to the last day of December, 1960—still, the trial court, as the trier of facts, found as a fact that all the labor and material for which the claim was made was performed and delivered subsequent to December 31, 1960, and that the notice of claim and statement of account given by plaintiff on April 28, 1961 was timely given, in that it was within 90 days after the 10th day of the month next following each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part. The court also found, in effect, that plaintiff's previous "estimates" were exactly what they purported to be—only a rough estimate of the labor performed and material delivered to the date thereof; further, that sub-contractors performing labor and furnishing material under lump-sum contracts generally "over-estimated" the value of the labor performed and material delivered, in order to draw on the contract in advance of the total work actually performed. The record adequately supports the trial court's findings in such respect and may therefore not be disturbed.

The statute itself requires the claimant to show only the "approximate date or dates" of performance or delivery when the claim is for multiple items of labor or material to be paid for on a lump-sum basis. Therefore, particularly in view of the remedial nature of the statute and the purposes to be accomplished thereby, we are of the opinion that plaintiff properly perfected its claim against the contractor's payment bond and the surety thereon, and that the judgment of the trial court is correct.

Finding no error, appellant's points and each of them are overruled, and the judgment of the trial court is affirmed.