**Robert B. YATES et al., Appellants,**

**v.**

**INDUSTRIAL STEEL PRODUCTS COMPANY, Appellee.**

**No. 7658.**

Court of Civil Appeals of Texas.

Texarkana.

Oct. 19, 1965.

Rehearing Denied Nov. 2, 1965.

L. E. Elliott, Brundidge, Fountain, Elliott & Churchill, Dallas, for appellants.

M. Sims Davidson, Eldridge, Goggans, Davidson & Silverberg, Dallas, for appellee.

CHADICK, Chief Justice.

"This is a suit by a material supplier against a public contractor and his surety under the McGregor Act, Article 5160, Vernon's Annotated Civil Statutes. Plaintiff Industrial Steel Products, Inc. furnished structural steel and other construction materials to defendant Robert B. Yates for two buildings Yates was erecting for the Dallas Independent School District. These materials were furnished under separate written subcontracts, each specifying the terms of payment as follows: '½ of 1% 10 days net 30 days'. The parties construe this language as requiring payment in a lump sum * * *. Defendant National Surety Corporation executed payment bonds for each project under the McGregor Act and the principal questions here are the timeliness and sufficiency of the notices given by plaintiff to the surety.

"Delivery of the materials in question began in June and ended in October, 1961. After allowing for payments and other credits, the balance owed by Yates upon completion was $52,398.44 on one subcontract and $128,527.72 on the other, making a total of $180,925.76, for which recovery is now sought.

"On November 8th, 1961, Industrial delivered to both Yates and the surety the first notices now in question. Each of these was accompanied by a copy of the subcontract and by a 'statement of account' giving as dates of delivery 'January 3, 1961, through October 31, 1961', and describing the materials as 'Necessary Structural Steel, Shop Fabricated Miscellaneous Steel Direct and Steel Longspan'. Thereafter on December 1, 1961, Industrial delivered to Yates and the surety additional notices, each of which were accompanied by a more de-tailed statement of account, specifying the dates of delivery, the items delivered on such dates and the prices attributed to each delivery. The surety admits that the notices of December 1, 1961, were sufficient to fix liability on it for the materials delivered in August, September and October and acknowledges liability for these materials in the amount of $66,784.00, but contends that such notices do not fix liability for items delivered in June and July, because not given 'within ninety (90) days after the 10th day of the month next following each month in which the material was delivered in whole or in part', as provided in Section B(a) of Article 5160. The Surety also contends that the notices of November 8, 1961, were not sufficient to fix liability on it for the materials delivered in June and July, because such notices did not give 'the approximate date or date of performance or delivery on both and describing the labor or materials or both in such a manner so as to reasonably identify said labor or materials', as provided in Section B(a) (2) of Article 5160."

The foregoing quotation is from a written opinion filed in the trial court. This summary by the trial judge is adopted and will be supplemented as the need arises. The plaintiff, Industrial Steel Products Company, Inc., was awarded judgment against defendants Yates and National Surety Corporation, jointly and severally, for One Hundred Eighty Thousand Nine Hundred twenty-five and 76/100 ($180,-925.76) Dollars, with interest at the rate of Six (6%) per cent per annum from and after December 1, 1961, until paid, together with an attorney fee of ten thousand dollars for service in the trial court and two thousand five hundred ($2,500.-00) dollars for the same in the appellate courts, and for costs, etc. Yates and National Surety Corporation have appealed.

The Legislature at its Regular Session in 1959 amended Article 5160 and repealed Articles 5161, 5162, 5163, and 5164. The amended Article became effective April 27

of that year and systemized statutory policy and procedures governing performance and payment bonds required of construction contractors with the state or its political subdivisions. The comprehensive nature of the statute and the Legislature's intent is indicated to some extent by the headings the Legislative Bill gave to the various sections of the new enactment, such as, "Contractor's Bonds for Performance and Payment for Labor and Material", "Rights of Persons Furnishing Labor and Material", "Notice Required", "Claimant Defined", "Venue", etc. The Article is subdivided into seven main parts, each prefixed with a capitalized letter of the alphabet. Then each subdivision is further divided with divisions indicated by letters or numerals enclosed in parenthesis. The language of the Article the parties regard as relevant to this case is found in Section B, as follows:

"Rights of Persons Furnishing Labor or Material. Notice Required

"B. Every claimant who has furnished labor or material in the prosecution of the work provided for in such contract in which a Payment Bond is furnished as required hereinabove, and who has not been paid in full therefor, shall have the right, if his claim remains unpaid after the expiration of sixty (60) days after the filing of the claim as herein required, to sue the principal and the surety or sureties on the Payment Bond jointly or severally for the amount due on the balance thereof unpaid at the time of filing the claim or of the institution of the suit; provided:

"(a) Notices Required for Unpaid Bills, other than notices solely for Retainages as hereinafter described.

"Such claimant shall have given within ninety (90) days after the 10th day of the month next following each month in which the labor was done or performed, in whole or in part, or material was delivered, in whole or in part, for which such claim is made, written notices of the claim by certified or registered mail, addressed to the prime contractor at his last known business address, or at his residence, and to the surety or sureties. Such notices shall be accompanied by a sworn statement of account stating in substance that the amount claimed is just and correct and that all just and lawful offsets, payments, and credits known to the affiant have been allowed. Such statement of account shall include therein the amount of any retainage or retainages applicable to the account that have not become due by virtue of terms of the contract between the claimant and the prime contractor or between the claimant and a subcontractor. When the claim is based on a written agreement, the claimant shall have the option to enclose, with the sworn statement of account, as such notice a true copy of such agreement and advising completion or value of partial completion of same.

"(1) * * *

"(2) When the claim is for multiple items of labor or material or both to be paid for on a lump sum basis such notice shall state the name of the party for whom the labor was done or performed or to whom the material was delivered, the amount of the contract and whether written or oral, the amount claimed and the approximate date or dates of performance or delivery or both and describing the labor or materials or both in such a manner so as to reasonably identify the said labor or materials.

"(3) * * *

"(b) * * *

"(c) * * *".

The differing solutions the parties propose necessitates consideration and construction of several subsections and subdivisions of Section B above quoted.

There is no suggestion in the briefs that judgment is controlled by other parts of the Article. What is hereafter said should be understood in context with the portion of the Article quoted and limited to the facts of this case.

The beginning paragraph of Section B can only be understood as imposing liability upon a payment bond surety for the payment of the obligation of a contractor to an unpaid furnisher of material sixty days after the furnisher files a notice and claim in accordance with the section's later provisions; suit to enforce liability is authorized at the expiration of such sixty days if the unpaid indebtedness is due, and if not then due, enforcement is authorized at maturity. Neither subsection (a) of Section B nor the classifications made by the subsection's subdivisions (1), (2) and (3) suggests that liability of the surety is in anywise affected by maturity or non-maturity of payment at the time notice is given. There is a requirement that the account between the furnisher and contractor be stated, but liability fixed by the notice and claim is not made to depend upon the account as stated being then due and payable. Inherent in this construction is recognition that contractual terms of payment vary. Public policy declared by Art. 5160 does not penalize or constrict the freedom of contract. The parties are at liberty to contract that material be paid for at any time agreeable to them, and still by complying with the statute's notice and claim procedure have the protection of the payment bond.

The first paragraph of subsection (a) sets up conditions of general application to payment bond claims, except claims embraced by subsections (b) and (c). The paragraph specifically requires that written notice to a payment bond surety of a claim for material furnished shall be given ninety days following the tenth day of the month next after the month in which the material is delivered. This is the only provision in subsection (a) setting a time limit for notice, or dealing with the time element of notice. In addition the paragraph details the method of giving notice, that is, by certified or registered mail, addressed to the prime contractor, surety, etc. The remaining provisions of the paragraph are concerned with claim form, substance and procedure. The last sentence of this paragraph gives the claimant an option in presenting a claim when it is based upon a written contract. Instead of complying with the several requirements that precede this sentence, the claimant may give notice by enclosing with a sworn statement of account a true copy of the contract underlying the claim and advice to the surety of the completion or partial completion of the contract. The sentence makes no change in the time for notice previously specified. Following this first paragraph in subsection (a) are subdivisions (1), (2) and (3) wherein particular requirements are made applicable specifically to claims having the characteristics delineated in such subdivisions.

The parties having stipulated that the claim in suit is an outgrowth of a lump-sum contract, only subdivision (2) need be further consulted. The language of the subdivision is silent on the time element of notice. The form in which the statute is arranged and written indicates that the subdivision is of special application and controls over general provisions of the first paragraph of subsection (a) insofar as lump-sum contracts are concerned. 82 C. J.S. Statutes § 347b, and generally §§ 345, 346 and 348. Subdivision (2) specifies that the furnisher set out in the notice to the surety the name of the party to whom material was delivered, the amount of the contract, whether it is written or oral, the amount claimed, the approximate date of delivery, and describe the material in such way as to reasonably identify it. These precepts supersede the general provisions on the same subject. Clearly the time limit on notice is not modified or superseded by a different provision thus leaving the time element prescribed in the first paragraph of subsection (a) unchanged. This conclu-

sion is in harmony with the interpretation implicit in the court's recapitulation of the facts showing liability in United Benefit F. Ins. Co. v. Metropolitan Plumbing Co., 363 S.W.2d 843, at page 850 (Tex.Civ.App. 1962, writ ref., n. r. e.).

On November 8, 1961, Industrial Steel Products Company, Inc., gave notice of its claims against Yates to the surety, National Surety Corporation, Inc. The sworn statement of account as to each project was in this form, to-wit:

(Stadium)

| "Date Delivered | Item | Price |
|---|---|---|
| January 3, 1961 Thru October 31, 1961 | Necessary Structural Steel, Shop Fabricated Miscellaneous Steel, Miscellaneous Steel Direct, and Steel Longspans | $175,658.00 |
| | TOTAL AMOUNT PAID | 123,259.56 |
| | BALANCE DUE | $ 52,398.44 |

(School)

| "Date Delivered | Item | Price |
|---|---|---|
| February 28, 1961 Thru October 31, 1961 | Necessary Structural Steel, Shop Fabricated Miscellaneous Steel, Miscellaneous Steel Direct, and Steel Longspans | $135,416.00 |
| | AMOUNT PAID | 6,888.68 |
| | BALANCE DUE | $128,527.32" |

The steel company supplemented the two claims on December 8, 1961, with separate sworn statements of account referable to each project. The supplemental statement on the stadium listed material of the value of $48,024.00 as delivered in June, material of the value of $2,000.00 delivered in July, and material of the value of $2,434.00 delivered in October, less a credit of $59.56 applied to the account on October 6. The high school project supplemental statement of account listed material of the value of $29,000.00 delivered in June, material of the value of $35,446.00 delivered in July, material of the value of $3,000.00 delivered in August, material of the value of $57,963.00 delivered in September, and material of the value of $3,387.00 delivered in October. Credited to this account in the month of October, 1961, is an allowance of $257.15 and an additional allowance in November of $11.53.

As Article 5160 has been construed above, and if the November 8, 1961, notice is sufficient, National Surety Corporation is liable to pay for material delivered July through October, 1961; that is to say, the surety is liable to pay for the material delivered, of which it had notice, within ninety days after the tenth of the month next following the month in which delivery was made. The surety concedes that it is liable for the value of the material delivered in August and thereafter as the supplemental notice of December 1, 1961, was sufficient to fix liability for that period. The question narrows to this, is the notice and claim of November 8, 1961, sufficient to fix liability on the surety for material delivered during July, 1961?

The only payment bond case touching the issue here that has reached the appellate court since Art. 5160 was amended in 1959 is United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co., supra. Therein the El Paso court decided that the Article, as amended and re-enacted, was remedial in nature and subject to the most liberal construction of which it is susceptible. The Article as it existed prior to amendment in 1959 was considered in Employers Liability Assurance Corp. v. Young County Lumber Co., 122 Tex. 647, 64 S.W.2d 339. The Supreme Court viewed the action and remedy as being solely derived from the statute and held that the statutory provisions were mandatory and exclusive in nature and must be complied with in all respects in order to enjoy its benefits. Apropos civil statutes, Art. 10, Subsection 6 says: "In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." The opinion in the United Benefit case cited above shows the approximate dates of delivery of material in that case to be from Dec. 1, 1960 to Feb. 1, 1961, and notice and claim therein to have been given the surety April 28, 1961. From these facts it may be calculated that notice of December material deliveries were not given within 90 days following the tenth day of the month next following the month of delivery, but January material deliveries were made within such time period. Because the evidence in the case supported findings that all material was delivered during January the trial court judgment was affirmed. The opinion says that,

"The statute itself requires the claimant to show only the 'approximate date or dates' of performance or delivery when the claim is for multiple items of labor or material to be paid for on a lum-sum basis. Therefore, particularly in view of the remedial nature of the statute and the purposes to be accomplished thereby, we are of the opinion that plaintiff properly perfected its claim against the contractor's payment bond and the surety thereon. * * *"

■ The notice in this appeal asserts delivery of material was made at times so remote from the notice date (that is, more than 90 days after the tenth day of the month next after delivery) that the statute imposes no liability on the surety, as well as at times when liability would accrue thereunder, much as in the United Benefit case. The notice is ambiguous, but the surety was in fact apprised that some part of the material deliverable under the lump-sum contract had been delivered at a time when the statute would impose liability as a result of notice. Under United Benefit supra the notice substantially complied with the statute's provisions and is sufficient to bring material delivered to Yates in the month of July within the protection of National Surety Corporation's payment bond.

The total value of material delivered on the stadium subcontract in July and afterwards was $4,434.00, and the total value delivered in the same period on the high school subcontract was $99,796.00, making a grand total of $104,230.00. The judgment of the trial court will be modified and revised to adjudge the steel company a recovery of $104,230.00, with interest from Dec. 1, 1961, against the surety company.

■ The surety company makes a very cogent point that the defeasance clause of the payment bond does not obligate the surety to pay attorney fees and that Art. 2226 authorizing recovery of attorney fees for materials furnished can have no application because the steel company furnished no materials to the surety. Recently a payment bond case, Ferrier Brothers v. Brown (Tex.Civ.App.) 362 S.W.2d 181, writ ref., n. r. e., expressly approved allowance of an attorney fee. Article 2226 was held to authorize recovery of the fee. The rationale of the case seems to be that Article 2226 governs in actions to recover for materials

furnished because the payment bond surety assumed liability to pay for material furnished upon the concurrence of the contractor's failure to pay, the supplier's notice, etc. An earlier case, F. & C. Engineering Co. Inc., v. Moore (Ct.Civ.App.) 300 S.W.2d 323, writ refused, n. r. e., disallowed recovery for a fee from the surety. The Ferrier case will be followed. Appellant's point of error in this regard is overruled.

The motion for rehearing filed by each party is overruled. The trial court judgment will be affirmed except in the particular now mentioned. Industrial Steel Products Company's recovery from National Surety Corporation is modified and judgment is rendered that the steel company recover of the surety the sum of $104,230.00, with interest from December 1, 1961. The opinion filed in this case September 7, 1965, is withdrawn and the above substituted for it.