# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00677-CV

**Mestizo Enterprises, Inc.; Gelacio Meraz; and Wil Construction, Appellants**

**v.**

**Safeco Insurance Company of America, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. D-1-GN-08-003651, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Mestizo Enterprises, Inc. ("Mestizo"), Gelacio Meraz ("Meraz"), and Wil Construction ("Wil") (collectively, "Appellants") appeal the trial court's judgment granting the no-evidence and traditional motion for summary judgment filed by Safeco Insurance Company of America ("Safeco") for failure to comply with the notice requirements of Chapter 2253 of the Texas Government Code, also known as the McGregor Act. *See* Tex. Gov't Code Ann. §§ 2253.001-079 (West 2008). On appeal, Appellants argue that Safeco waived its rights to require compliance with the notice provisions of the Act. Because we hold that a genuine issue of material fact exists with regard to whether Safeco waived its rights to insist upon compliance with the notice requirements of the McGregor Act, we reverse the trial court's judgment.

## BACKGROUND

K-Bar Services, Inc. ("K-Bar") contracted with the Texas Department of Transportation to complete a road construction project in Travis County. K-Bar subcontracted the

project to Blue River Construction ("Blue River"), which in turn subcontracted the majority of the project to Appellants. Appellants worked on the project from June 26, 2005 through November 3, 2005, at which point construction was halted following the discharge of K-Bar as the prime contractor.

As prime contractor on a public work project, K-Bar had obtained a statutorily required payment bond from Safeco. *See* Tex. Gov't Code Ann. § 2253.021. The purpose of requiring such a bond is to protect subcontractors and suppliers, who may not place a lien on a public building. *Ramex Constr. Co. v. Tamcon Servs., Inc.*, 29 S.W.3d 135, 139 (Tex. App.—Houston [14th Dist.] 2000, no pet.). On October 31, 2005, K-Bar was terminated as prime contractor for the project, and Safeco took over as prime contractor. In November 2005, Wilberto Montiel, owner of Wil, attempted to place a claim on the payment bond, asserting nonpayment of $101,560.60 for work done between June and November 2005. According to Montiel, he was acting as agent for the other Appellants, Mestizo and Meraz, when he attempted to place the claim. Montiel sent a claim letter to Safeco on November 2, 2005. In a sworn affidavit, Montiel stated that at some point in mid-November he also handed a copy of the claim to James Kalisek, K-Bar's general manager, at the construction site. Kalisek denies receiving the claim at that time, asserting instead that K-Bar did not receive notice of the claim until January 2006.

After receiving Montiel's claim, Safeco claims representative Jeremy Medeiros responded with two letters. The first, dated November 14, 2005, acknowledged receipt of the claim materials sent by Montiel. The second, dated December 13, 2005, again acknowledged receipt of Montiel's letter and also requested additional materials to "facilitate our independent investigation

2

of the claim." Each letter also contained language reserving Safeco's rights to insist upon compliance with notice requirements mandated by Texas law, although subsequent e-mail correspondence sent by Safeco to Montiel lacked similar language. In December 2005, Safeco and Wil entered into negotiations for a completion agreement, under which Wil would complete the construction project as prime contractor. One of the terms of the completion agreement was the settlement of Wil's claim on the payment bond for the total of $80,000. The parties negotiated extensively over the draft completion agreement, but, according to Montiel, Safeco raised the amount of the statutorily required payment bond from $200,000 to $320,000 on the eve of signing. *See* Tex. Gov't Code Ann. § 2253.021. Montiel was unwilling to comply with the increase in the amount of the bond, and the agreement went unsigned.

After termination of negotiations for the completion agreement, Safeco rejected Wil's claim on the payment bond for failure to comply with the statutory notice requirements of the McGregor Act. Specifically, Safeco contended that Appellants failed to provide timely notice to the surety and the prime contractor,[1] failed to provide additional notice to the prime contractor,[2] and

---

[1] Under the McGregor Act, notice of claim on a payment bond must be mailed to the prime contractor and surety "on or before the 15th day of the third month after each month in which any of the claimed labor was performed or any of the claimed material was delivered." Tex. Govt. Code Ann. § 2253.041(b) (West 2008). Safeco asserts that Appellants, who worked on the project from June 26, 2005 to November 3, 2005, did not send notice to K-Bar, the prime contractor, until January 2006, and to Safeco, the Surety, until November 2, 2005. Appellants concede that they did not provide notice to Safeco until November 2, 2005, but contend that Montiel hand-delivered notice to Kalisek, K-Bar's general manager, in mid-November of 2005. Appellants also contend that, at the time they provided notice to Safeco, Safeco was serving as the prime contractor on the project. Consequently, Appellants argue that their notice to Safeco operated as notice to both the surety and the prime contractor.

[2] Under the McGregor Act, a payment bond beneficiary without a direct contractual relationship with the prime contractor must "mail to the prime contractor written notice of claim for any unpaid public work labor performed . . . on or before the 15th day of the second month after each

3

failed to send notice by certified or registered mail.[3] After Safeco refused to pay the claim, Appellants filed suit against Safeco and others for amounts allegedly owed under the contract. The district court granted Safeco's motion for no-evidence and traditional summary judgment. The action against Safeco was severed, and this appeal followed.

## STANDARD OF REVIEW

Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To be entitled to summary judgment, the movant must establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166(c). In our de novo review of a summary judgment, "we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

## DISCUSSION

In their first issue on appeal, Appellants argue that a genuine issue of material fact exists with regard to whether Safeco waived its right to assert the defense of improper notice under

---

month in which the labor was performed." *Id.* § 2253.047(c). Again, Safeco asserts that Appellants, who worked on the project from June 26, 2005 to November 3, 2005, did not send notice to K-Bar, the prime contractor, until January 2006. Appellants contend that Montiel hand-delivered notice to Kalisek, K-Bar's general manager, in mid-November of 2005, and that their November 2, 2005 notice to Safeco operated as notice to both the surety and the prime contractor.

[3] Any notice required by the McGregor Act "to be mailed must be sent by certified or registered mail." *Id.* § 2253.048. Safeco asserts that Appellants did not send any notice by certified or registered mail. Appellants concede that they did not provide notice by certified or registered mail, but argue that their "substantial compliance" with the delivery requirements, including sending notice to Safeco by regular mail and hand-delivering notice to K-Bar, cures any defect.

4

the McGregor Act.[4]  Texas courts have consistently held that, "[b]ecause the Act is remedial in nature, 'it is to be given the most comprehensive and liberal construction possible.'" *Redland Ins. Co. v. Southwest Stainless, L.P.*, 181 S.W.3d 509, 512 (Tex. App.—Fort Worth 2005, no pet.) (quoting *Featherlite Bldg. Prods. Corp. v. Constructors Unlimited, Inc.*, 714 S.W.2d 68, 69 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.)); *see also Dealers Elec. Supply Co. v. Scoggins Constr. Co.*, 52 Tex. Sup. J. 1088, 2009 Tex. LEXIS 475, at *6 (Tex. July 3, 2009) ("It is

---

[4] Appellants' original brief contains two numbered issues, the first stating that Safeco waived its rights under the McGregor Act, and the second stating that Appellants' arguments "raise, at a minimum, a fact issue, which is sufficient to prevent summary judgment against them." For two reasons, we address only the first issue.

First, though the second issue is structured as a "general" point of error raising all arguments made in the trial court during summary judgment proceedings, *see Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970), Appellants' briefing of this issue concerns only their waiver defense.  When appellants present a general point of error but do not brief specific grounds raised during summary judgment proceedings, appellate courts have discretion to choose whether to address grounds raised in the trial court but not specifically argued on appeal.  *See Stevens v. State Farm Fire & Casualty Co.*, 929 S.W.2d 665, 670 (Tex. App.—Texarkana 1996, writ denied) (asserting appellate court's "discretion to refuse to consider [appellant's] unargued bases for reversing the judgment" even when appellant presents general point of error).  Consequently, as Appellants do not address arguments other than waiver in their original brief, we need not consider any additional issues raised before the trial court.

Second, our ruling for Appellants on the issue of waiver reverses the summary judgment order in its entirety, obviating the need to reach additional issues raised by Appellants.  While Texas appellate courts may in some instances limit the issues on remand, "'the cases are rare and very exceptional in which [courts are] warranted in limiting the issues of fact.'" *Hudson v. Wakefield*, 711 S.W.2d 628, 631 (Tex. 1986) (quoting *Cole v. Estell*, 6 S.W. 175, 177 (Tex. 1887)).  Limited remands from summary judgment appeals are particularly uncommon, due to the limited nature of the appeal itself: the trial record is not fully developed, parties may change theories during trial, and appellate courts must evaluate facts in the light most favorable to nonmovant.  *See id.*  Accordingly, as we reverse the order in its entirety and without additional instruction, we need not reach other arguments supporting Appellants' position.  *See Rodriguez v. Classical Custom Homes, Inc.*, 176 S.W.3d 928, 933 (Tex. App.—Dallas 2005, no pet.) (reversing summary judgment order in breach of contract case on basis of waiver and consequently finding it "unnecessary to address the remainder of [appellants'] issues on appeal").

well-recognized that the McGregor Act is remedial in nature, and should be liberally construed to achieve its purposes.")

The purpose of the Act is to provide protection to subcontractors and suppliers, who cannot place liens on public buildings. *Ramex*, 29 S.W.3d at 139 ("Because a subcontractor or supplier may not place a lien against a public building, the legislature passed what has become known as the McGregor Act, which requires contractors to secure a bond to ensure payment."). Accordingly, courts have held that the notice requirements should be read "to provide a simple and direct method of giving notice and perfecting claims." *Argee Corp. v. Solis*, 932 S.W.2d 39, 53 (Tex. App.—Beaumont 1995), *rev'd on other grounds*, 951 S.W.2d 384 (Tex. 1997) ("We do not perceive the legislative purpose behind the McGregor Act to be that of creating technical tricks, traps and stumbling blocks to the filing of legitimate notices of claims.").

While the McGregor Act imposes certain notice requirements on the claimant, Texas courts have long recognized that such requirements may be waived. *See Miner-Dederick Constr. Corp. v. Mid-County Rental Serv., Inc.*, 603 S.W.2d 193, 199-200 (Tex. 1980) (holding that notice requirements of McGregor Act may be waived); *see also Graham v. San Antonio Mach. & Supply Corp.*, 418 S.W.2d 303, 310-11 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.) (holding that timely notice requirement of McGregor Act, like other notice requirements of Act, may be waived). Under Texas law, "[w]aiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 82 (Tex. App.—Tyler 1995, writ dism'd) (citing *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 401 (Tex. 1967)). "The key element . . . in establishing waiver

is . . . the intent of the alleged waiving party." *Id.* In the absence of direct evidence of intentional waiver, waiver by implication may be inferred from the party's intentional conduct. *Id.* However, "waiver by implication should not be inferred contrary to the intention of the party whose rights would be injuriously affected thereby, unless the opposite party has been misled to his or her prejudice." *Cecil Pond Const. Co. v. Ed Bell Invs., Inc.*, 864 S.W.2d 211, 215 (Tex. App.—Tyler 1993, no writ).

As a general matter, "the ground most frequently relied upon by the [waiver] cases [is] that the notifier has been lulled into a sense of security concerning the sufficiency of his notification and was thus led into failure to give another notification within the time prescribed by the statute." *United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co.*, 363 S.W.2d 843, 848 (Tex. Civ. App.—El Paso 1962, no writ). For the purposes of the McGregor Act, waiver occurs when "the surety after receiving a defective or improper notice has by its own affirmative acts and conduct created an impression that the notice given is adequate." *Tex-Craft Builders, Inc. v. Allied Constr.*, 465 S.W.2d 786, 793 (Tex. Civ. App.—Tyler 1971, writ ref'd n.r.e.).

Such an impression may be created when "the surety makes some response to the defective notification." *Id.*; *see also United Benefit*, 363 S.W.2d at 848 ("Acts most frequently held to constitute such grounds have arisen in cases where, in addition to the failure to object, there is—on the part of the noticee—a promise to act, or action, in response to the defective notification."). For example, a surety may waive its rights to notice when it leads the claimant "to believe its claim was approved by [the surety] and would be paid." *General Ins. Co. v. Smith & Wardroup, Inc.*, 388 S.W.2d 262, 264 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.); *see also*

7

*Texarkana Constr. Co. v. Alpine Constr. Specialities, Inc.*, 489 S.W.2d 941, 944 (Tex. Civ. App.—Texarkana 1972, writ ref'd n.r.e.) (holding that surety's promise to pay claim and request of claim documentation constituted waiver of McGregor Act notice requirements). Settlement negotiations may also serve as evidence for the defense of waiver. *See Graham*, 418 S.W.2d at 311 (explaining that "extensive negotiations entered into by the obligor looking toward settlement of a claim is admissible and can support a finding of waiver of the right to object to a failure to give notice of claim within the time required").

Acts of the surety indicating the intention to preserve legal rights, on the other hand, undermine the defense of waiver. One way in which parties may reserve their rights is in writing. *See Consolidated Eng'g Co. v. Southern Steel Co.*, 699 S.W.2d 188, 191 (Tex. 1985) (holding waiver defense was invalid in breach of contract case when "written correspondence between the parties reveals that, despite their mutual endeavor to continue performance, they intended to preserve all of their legal rights"); *Bluebonnet Sav. Bank F.S.B. v. Grayridge Apartment Homes*, 907 S.W.2d 904, 911 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (explaining that bank's repeated assertions that "'passing' the various foreclosure sales was not a waiver of any debt or of any future right to foreclose" defeated waiver defense). Further, while a "party's silence or inaction for a period of time long enough to show an intention to relinquish the known right . . . may be sufficient to prove a waiver," *Horton v. DaimlerChrysler Fin. Servs. Ams., LLC*, 262 S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.), "the fact that a surety remains passive or silent after learning of . . . an act or omission on the part of the obligee does not constitute such acquiescence or consent as to preclude the surety from asserting" its legal rights. *United Benefit*, 363 S.W.2d at 848.

8

Appellants maintain that Safeco took actions inconsistent with a reservation of rights and therefore waived the enforcement of those rights. They argue that Safeco, in responding to the claim materials and requesting additional documents, indicated that the claim was valid and actionable. They also assert that the settlement negotiations between the parties indicated that Safeco found the claim valid. According to Appellants, Safeco's actions during completion negotiations, which included sending Montiel a receipt for the agreed-upon settlement amount of $80,000, constitute behavior inconsistent with enforcing notice rights.

Safeco responds that the letters it sent in response to Montiel's claim materials included language that specifically indicated that it was reserving its right to enforce the notice provisions of the McGregor Act. In the first response from Safeco, Medeiros wrote, "This acknowledgment is not to be deemed a waiver of any of the terms or conditions of the bond or the statutes and laws pertaining thereto. We specifically reserve any and all rights and defenses that we may have under the terms of our bond or under the law." In the second letter, Medeiros wrote:

> This correspondence and all prior or subsequent communications and/or investigative efforts are made with the express reservation of all rights and defenses that Safeco Insurance Company of America or K-Bar Services, Inc. has or may have at law, in equity, or under the terms and provisions of the bond and contract documents. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitation provisions.

Safeco asserts that these reservations of rights defeat a waiver defense, even though such reservations were absent from subsequent correspondence between the parties (including e-mails sent by Safeco to Montiel during completion negotiations).

9

Further, Safeco argues that settlement of the claim was discussed only in the context of the completion agreement and should have been understood as conditional upon the successful negotiation of the completion agreement. Safeco maintains that its negotiation of the claim as part of the completion agreement does not support the inference that it waived notice of the claim, despite the fact that the settlement negotiations included investigation of the claim by Safeco, discussion of the details of the claim with Montiel, and calculation of the proper settlement amount for services rendered.

Based on the record before us, we cannot conclude as a matter of law that Safeco did not waive its rights to insist on compliance with the notice requirements of the McGregor Act. The question of waiver by inference is necessarily fact-bound, and "the question of waiver is one of fact for the trier of fact when it is a matter of inference." *Robinson v. Robinson*, 961 S.W.2d 292, 300 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citing *Ford v. Culbertson*, 308 S.W.2d 855, 865 (Tex. 1958)). Here, as in *Ford*, "the facts set out above would permit reasonable minds to differ as to the inferences to be drawn from such facts," and consequently summary judgment is inappropriate.[5] 308 S.W.2d at 865. In particular, the facts showing that Safeco responded to the submitted claim material, investigated the claim, negotiated the claim, and sent Montiel a receipt for payment on the claim may lead to an inference that Safeco waived enforcement of the notice

---

[5] Texas courts have held that "while waiver is normally considered a question of fact, it may become a question of law if the facts and circumstances are clearly established." *Ostrowski v. Ivanhoe Prop. Owners Improvement Ass'n*, 38 S.W.3d 248, 255 (Tex. App.—Texarkana 2001, pet. denied). Here, however, disagreements between the parties, particularly regarding differences in the understanding of the "conditional" context of the settlement/completion negotiations, preclude such an approach.

10

requirements, even in light of the language reserving rights in Safeco's letters and the fact that the settlement discussions took place as part of negotiations for a completion agreement. These are issues for the finder of fact to resolve.

## CONCLUSION

Because we have determined that the trial court erred in granting Safeco's motion for no-evidence and traditional summary judgment, the trial court's judgment is reversed and the case is remanded for further proceedings.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Remanded

Filed: November 13, 2009

11