The ARGEE CORPORATION and Seaboard Surety Company, Appellants

v.

Frank SOLIS, individually and d/b/a Allied Steel General Contractors, Appellee.

No. 09–93–121 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 12, 1995.

Decided Oct. 12, 1995.

George C. Baldwin, Lloyd, Gosselink, Fowler, Blevins & Matthews, Austin, Charles K. Kebodeaux, Orgain, Bell & Tucker, Beaumont, for appellant.

Stephen D. Harrison, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellee.

## OPINION

WALKER, Chief Judge.

This case arises out of the construction of three prisons in Snyder, Dayton, and Woodville, Texas. In October 1989, the Argee Corporation, now known as Green International, Inc., filed suit against Frank Solis d/b/a Allied Steel General Contractors and other defendants who were either never served with process or dropped as defendants in the course of the litigation. In this opinion we shall reference appellant as "Argee" and appellee shall be referred to as "Solis."

Factually, Argee was the general contractor on the three prison projects located near Snyder, Dayton, and Woodville, Texas. Solis was a subcontractor on these three projects. Pursuant to the three subcontract agreements, Solis agreed to provide the labor necessary for the steel erection and a portion of the concrete work. According to Solis, appellee was forced to abandon the Dayton and Woodville projects when Argee failed to make timely payments. Argee initiated suit against Solis making claims of breach of contract, fraud and other claims not addressed in this appeal. Solis counterclaimed against Agree for breach of contract, conversion, fraud and other claims which are not material to this appeal.

During June and July of 1992, trial by jury was held. This jury reached a unanimous verdict, the overall effect of which favored Solis. On January 22, 1993, the trial court, disregarding numerous findings by the jury, entered judgment that Solis recover actual damages and prejudgment interest from Argee in the sum of $169,081.00, and actual

damages and prejudgment interest against Seaboard, jointly and severally with Argee, in the amount of $59,694.00. Both Argee and Solis have perfected appeal from this judgment.

Argee brings sixteen points of error while Solis, as cross-appellant, brings twenty-four points of error.

## OVERVIEW OF JURY VERDICT

In Jury Question No. 3, the jury determined that Argee breached its subcontract with Solis in several regards, pertaining to the Snyder Project and the Dayton Project. In Question No. 4, the jury determined that Solis did not breach his subcontract with Argee regarding the Snyder and Dayton Projects. On appeal, Argee takes no issue with these jury findings. At best and most, it appears that Argee, via this appeal, is attacking the jury's failure to excuse its respective breaches of the subcontract, which the jury refused to do. Furthermore, Argee's complaint on the jury's failure to find its respective breaches as having been "excused," is limited to the Dayton Project, even though the jury determined that Argee had breached both the Snyder and Dayton Projects. Appellant brings no point of error assailing the jury's damage awards respecting the Snyder Project.

## ARGEE/SEABOARD POINTS OF ERROR

Appellants' point of error one contends that the trial court erred in overruling Argee's Motion for Directed Verdict on the issue of release, and Argee and Seaboard's Motion for Judgment Notwithstanding the Verdict and Motion to Disregard the Jury's Response to Question No. 7, because the waiver of lien releases executed by Solis bar portions of the damages awarded to Solis as a matter of law.

 Both appellant and appellee suggest that the question before this Court is a novelty in that no Texas authorities have construed the effect of an executed waiver of lien upon claims for extra work. Both appellant and appellee cite numerous non-Texas authorities supportive of their respective positions. Although a pursuit of this interesting legal question would be of present and future interest, we decline the chase. It appears to this Court that an overruling of appellants' point of error one is justified through simple application of contract law, bearing in mind that appellants have made no contest to the factual determination that Argee not only breached its subcontract with Solis on the Snyder and Dayton Projects but further that such breach preceded the performance of any of the extra work that was not authorized in writing or covered by written change orders. Our perception of appellants' point of error one is that appellants now seek to benefit from Argee's own unexcused breach of the respective subcontracts. In more graphic terms, Argee now seeks redress through strict legal interpretation of the subcontracts which Argee breached. Under Texas law, when a party breaches a construction contract, that party relinquishes its contractual procedural rights concerning claims for additional costs. *Shintech, Inc. v. Group Constructors, Inc.*, 688 S.W.2d 144, 151 (Tex.App.—Houston [14th Dist.] 1985, no writ); *see also Tribble & Stephens Co. v. Consol. Serv.*, 744 S.W.2d 945 (Tex.App.—San Antonio 1987, writ denied); *North Harris County Junior College Dist. v. Fleetwood Const. Co.*, 604 S.W.2d 247, 254 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e). In *Shintech, Inc.*, our Fourteenth Court of Appeals affirmed the trial court's judgment and refused to enforce the breaching party's contention that the claimant had failed to timely comply with the written notice requirements of a claim for additional cost. Texas law further prevents a breaching party from enforcing favorable provisions contained in the very contract it breached. *Baker Marine Corp. v. Weatherby Engineering Co.*, 710 S.W.2d 690, 696 (Tex.App.—Corpus Christi 1986, no writ); *Sterling Projects, Inc. v. Fields*, 530 S.W.2d 602, 606 (Tex.Civ.App.—Waco 1975, no writ). Appellants' point of error one is overruled.

Appellants' points of error two through six contend trial court error in overruling Argee's and Seaboard's Motion for Judgment Notwithstanding the Verdict, Motion to Disregard Jury Findings, and Motion for New Trial concerning the jury's answers to Ques-

tion Nos. 12, 13 and 22.(E)(b). Appellant contends that the jury's answers to Question Nos. 12 and 13 regarding Argee's failure to pay the June 1989 payment was, as a matter of law, excused and that the jury's answers are unsupported by any evidence, or against the great weight and preponderance of the evidence.

For clarity, we set forth Jury Question Nos. 12, 13 and 22.(E)(b):

## QUESTION NO. 12:

Were any of the following failures, if any, to comply with the Dayton Subcontract by Solis excused by Argee's previous failure, if any, to pay the June 1989 payment to Solis?

Answer "Yes" or "No" to each category:

A. Solis' failure, if any, to complete his work on the Dayton Prison Project.

Answer: Yes

B. Solis' failure, if any, to compensate his employees on the Dayton Prison Project in accordance with the Dayton Subcontract.

Answer: Yes

C. Solis' failure, if any, to pay in full his material suppliers.

Answer: Yes

D. Solis' failure, if any, to show up for work on or after August 4, 1989.

Answer: Yes

If your answer to any portion of Question 12 is "Yes," then answer the following question. Otherwise do not answer the following question.

## QUESTION NO. 13:

Was the failure by Argee, if any, to pay the June 1989 payment to Solis, on the Dayton Project, excused by reason of Solis' previous failure, if any, to perform any of the following:

A. Execute and furnish all waivers of lien, releases, affidavits and statements from material suppliers required by Argee;

B. Compensate his employees on the Dayton Project in accordance with the appropriate Prevailing Wage Schedule, deduct taxes and insurance from payments to his employees on the Dayton Project, or prepare and submit certified payrolls to Argee; or

C. Pay in full his material suppliers.

It is not an excuse in favor of Argee, if, prior to the due date of the June 1989 payment, Argee waived the listed requirements of Solis.

A waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: No

## QUESTION NO. 22:

Conditions precedent to an obligation to perform are acts or events that are to occur after the contract is made and that must occur before there is a right to immediate performance and before there can be a breach of contractual duty.

The conditions precedent to Argee's obligations are as follows:

. . . . .

E. In order for Argee to have any obligation to compensate Allied, Allied must have executed or furnished all waivers of lien, releases, affidavits, and statements from material suppliers required by Argee.

. . . . .

E. Has Allied executed or furnished all waivers of lien, releases, affidavits, and statements from material suppliers required by Argee on the Project?

a. Snyder Project

Answer: Yes

b. Dayton Project

Answer: Yes

Jury Question Nos. 12 and 13 go to the very heart of the matter by inquiring whether the extraneous conduct of the parties excused literal performance of the subcontract agreement. In answering Jury Question 12, a question upon which appellee Solis, bore the burden of proof, the jury determined that Solis' failure to complete work on the Dayton

Project; compensate his employees on the Dayton Project in accordance with the subcontract; failure to pay in full his material suppliers; and failure to show up for work on or after August 4, 1989, was excused by Argee's previous failure to pay the June 1989 payment to Solis. Further, the jury responding to Question 13, failed to find that the failure by Argee to pay the June 1989 payment to Solis was excused by reason of Solis' previous contractual failings, further amplifying the jury's awareness, from the evidence, that the parties' course of conduct deviated from the written intent of the original contract. The burden of proof on Question 13 rested properly upon Argee to convince the jury that Argee's failure to pay the June 1989 payment was excused due to Solis' conduct. The jury was instructed that it was not an excuse in favor of Argee if, prior to the due date of the June 1989 payment, Argee waived such requirement on the part of Solis. Regarding the respective waivers of lien executed by Solis, evidence shows that Argee sent each monthly payment to Solis along with waivers of lien applicable to that payment. Solis would sign and return the waivers of lien and deposit the check. Solis testified to this procedure at trial. Argee consistently sent payments to Solis without first obtaining an executed waiver of lien. Evidence further established that Argee made payments to Solis even after Solis allegedly failed to pay material suppliers. We again emphasize that the findings to which Argee now objects, in Questions 12, 13 and 22.(E)(b), followed the jury's findings of breach of contract to which appellants make no contest as to evidence supportive of that determination.

■ We hold that under the appropriate standard of review, the evidence is factually and legally sufficient to sustain the jury's findings. Argee's contention that the jury's answers to Question Nos. 12 and 13 are unsupported by any evidence and must therefore fail as a matter of law, cannot be sustained. Having first examined the record for evidence that supports the jury's failure to find, ignoring all evidence to the contrary, we can but conclude that there exists evidence supportive of reasons not to excuse Argee for failure to pay Solis the June 1989

payment. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex. 1986); *Holley v. Watts,* 629 S.W.2d 694, 696–97 (Tex.1982). It is incumbent upon Argee in this appeal, to demonstrate that the evidence conclusively established all vital facts in support of Argee's contention that the June 1989 nonpayment to Solis was excused. *See Ritchey v. Crawford,* 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Meyerland Community Imp. v. Temple,* 700 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). If there be any evidence of probative force to support the finding, Argee's no evidence point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). Appellants' no evidence and matter of law contentions are overruled.

Argee further contends that there is factually insufficient evidence concerning the jury's answers to Question Nos. 12 and 13.

■ Further, we disagree with appellants' contention that the jury's answer to Question No. 13 was clearly against the great weight and preponderance of evidence as to be manifestly unjust. In great weight points of error we must examine the entire record. *See Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973). The appropriate standard of review requires this Court to determine whether some evidence supports the failure to find and then determine, in light of the entire record, whether the failure to find is manifestly unjust. Courts of appeals are admonished by our Texas Supreme Court to be mindful where the jury was not convinced by a preponderance of the evidence. *See Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988). Reversal is warranted only when the great weight of the evidence supports an affirmative answer to the question upon which appellant bore the burden. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We see from the evidence that Argee made payments to Solis after Solis allegedly failed to pay material suppliers. Notices of nonpayment to material suppliers were admitted into evidence. The record

establishes that Argee continued payments to Solis in spite of these notices.

Jury Question 12 inquired whether Argee had excused certain failures by Solis in complying with the Dayton Subcontract. From the evidence we find that Argee made payments to Solis after Solis allegedly failed to pay material suppliers. Certain of these payments were even made after notice of non-payment. Solis testified that he had paid all his employees and most of his suppliers. Solis' employees were paid for all of their work except for the last week when Argee did not pay Solis. Solis worked out a payment arrangement with his suppliers and gave credit to Argee for payments which Argee was required to make to Solis' laborers and suppliers when calculating Solis' damages.

Respecting compensation of employees, Argee was aware of Solis' error in temporarily paying less than the prevailing wage schedule as early as May 3, 1989, however Argee continued to make payments to Solis. Solis testified that the wage scale problems were cleared up at the Dayton Project within two months of when he began work there. Further, once the error was discovered Solis complied with the prevailing wage rate. Frank Solis and Fred Solis testified that certified payrolls were not required by Argee before July 1989. Fred Solis testified that Frank Solis paid all of his employees for all of their work except for the last week when Argee did not pay Solis. From the record, we can but conclude that the evidence supports the jury's finding that Solis' failures in performance under the Dayton Subcontract were due to Argee's unexcused failure to make the June 1989 payment to Solis. Appellants' points of error two through six are overruled.

Appellants' points of error seven, eight and nine attack the jury's answer to Question No. 19 which awards $0 as reasonable compensation to Argee for its damages, if any, that resulted from Solis' failure to comply with the Woodville Subcontract. Argee contends that such finding is contrary to the conclusive evidence or, at minimum, the great weight and preponderance of the evidence. Argee contends that damages in the sum of $139,-333.00 were established as a matter of law.

Again, we must first examine the record for evidence that supports the jury's failure to find damages, while ignoring all evidence to the contrary. If no evidence supports a failure to find, the Court then examines the entire record to determine whether the proposition is established as a matter of law. *Sterner v. Marathon Oil Company,* 767 S.W.2d at 690. The jury's failure to find need not be supported by any evidence because the jury is free to disbelieve the witness or witnesses of the party bearing the burden of proof. *Yap v. ANR Freight Systems, Inc.,* 789 S.W.2d 424, 425 (Tex.App.—Houston [1st Dist.] 1990, no writ).

Regarding appellants' great weight and preponderance of the evidence contention, we must determine whether some evidence supports the failure to find, then review the entire record to determine whether that failure is manifestly unjust. *Traylor,* 497 S.W.2d at 944–945. We have previously held that the findings of the jury are inviolate, and that the jury has the right to weigh the evidence and pass upon the credibility of the witnesses. *See Knupp v. Miller,* 858 S.W.2d 945, 948 (Tex.App.—Beaumont 1993, writ denied). Although great weight and preponderance points of error may give appellate courts some slight inroad to weighing credibility of witnesses, such should be undertaken with utmost caution for we are not entitled to substitute our conclusions from the evidence for that of the jury's. Where evidence exists of probative force supportive of the jury's findings, those findings must be sustained. *See St. John v. Barker,* 638 S.W.2d 239, 241 (Tex.App.—Amarillo 1982), *affirmed as modified,* 645 S.W.2d 261 (Tex. 1983).

Evidence as to damages on the Woodville Project was conflicting at least. We shall review the evidence supporting the jury's conclusion that Argee did not sustain damages. Fred and Frank Solis testified that the Woodville Project could be completed for the amount remaining on the original contract. Frank Solis testified that he had

completed approximately $104,000.00 worth of labor and materials on the Woodville Project for which he was never paid, thus the jury heard evidence that Argee had $104,000.00 in addition to the original subcontract amount of $365,000.00 to pay any replacement subcontractor. The replacement subcontract was for $409,153.00. Joe Adams, who was present on the last day Solis' men worked at the Woodville Project, concurred with Solis' estimate of the actual percentage of work done by Solis' crew at Woodville. The evidence supports the jury's verdict that 100% of the original subcontract amount was a fair and reasonable amount to complete the remaining portion of the original subcontract. A Crisp & Associates employee, Mike Wilson, testified that some of the work done by Crisp & Associates should not have been charged to Solis. Wilson also testified to poor work done by Champion/Stevens, the replacement subcontractor. Correspondence between Argee and Champion/Stevens was admitted indicating that Champion/Stevens had experienced problems regarding delivery of materials, coordination of work, and deficiencies. This evidence certainly lends support to the jury's determination that not all money paid by Argee to Champion/Stevens at Woodville resulted from Solis' failure to complete his subcontract. Bill Crisp, president of one of the replacement subcontractors, testified that some of the work which his company billed to Argee might have been outside the scope of Solis' original contract. Crisp also testified to various change orders issued for Crisp & Associates at the Woodville Project. Such evidence further supports the jury's determination that some money paid to Crisp by Argee at Woodville was for work outside the scope of Solis' contract. Cliff Gunter, Argee's superintendent at Woodville, testified to numerous change orders between Argee and Champion/Stevens for its completion of the subcontract at the Woodville Project, which change orders, although included in Argee's alleged damages, were outside the scope of Solis' contract. Mr. Gunter also testified to various change orders for Solis' contract at Woodville which were initiated by Argee after Solis' termination, but not approved by Solis which had the effect of lowering Solis'

contract amount. Argee used the reduced contract amount in its damage summary. Evidence was introduced that payment to replacement subcontractors at Woodville was at the rate of thirty dollars per hour for regular hours and forty dollars per hour for overtime hours. Finally, there is evidence regarding the salaries actually paid to workers and the rate of payment to Solis, from nine dollars to twelve dollars per hour. From this evidence, the jury could determine that the rates paid by Argee to replacement subcontractors were neither fair nor reasonable. Damages were vigorously contested. It was within the province of the jury to resolve the conflict in the testimony and assign appropriate weight to the testimony. We refuse to disturb that jury's finding and overrule appellants' points of error seven, eight and nine.

Appellants' points of error ten and eleven question the jury's award of $28,853.00 for damages resulting from Solis' alleged breach of the Dayton Subcontract. The jury found in response to Questions 10 and 11 that Solis failed to comply with the Dayton Subcontract by failing to: complete work on the project; pay in full its material suppliers; and, show up for work on or after August 4, 1989. The jury determined that such failure by Solis to comply with the Dayton Subcontract was excused by Argee's previous failure to make the June 1989 payment to Solis.

Argee contends that the trial court erred in overruling Argee and Seaboard's Motion for New Trial because the jury's award of $28,853.00 resulting from Solis' breach was inadequate and manifestly unjust. Argee further contends that such finding is against the great weight and preponderance of the evidence.

In considering appellants' points of error ten and eleven, we must likewise consider appellee's cross-points of error five and six. Solis, as cross-appellant, contends that the trial court erred in rendering and entering a judgment granting an offset of $28,853.00 to Argee with respect to actual damages awarded Solis on the Dayton Project. Cross-appellant Solis contends that the trial court erred in failing to vacate and modify its judgment entered on January 22, 1993, by deleting the

offset of $28,853.00 granted to Argee. We overrule Argee's points of error ten and eleven and sustain Solis' cross-points of error five and six.

The jury determined that Solis failed to comply with the Dayton Subcontract by failing to: complete work on the project; compensate his employees on the project in accordance with the subcontract; pay in full his material suppliers; and show up for work on or after August 4, 1989. The jury assessed damages in the sum of $28,853.00. However, the jury further specifically found that each such failure to comply was excused by Argee's previous failure to pay the June 1989 payment to Solis, i.e., because of Argee's breach, Solis' failures under the contract were excused.

■■■ The jury determined that Argee breached the Dayton Subcontract by failing to: timely purchase metal building materials; timely submit shop drawings; timely schedule the delivery of materials; coordinate the work of other subcontractors; or obtain timely resolution of conflicts in the plans and specifications. Thus, Solis' lack of performance or breach of performance was justifiably excused and cannot provide the basis for an offset by Argee.

■■■ We hold that Argee's breaches of the Dayton Subcontract excused further performance by Solis. Default or breach by one party excuses performance by the other. *See Mead v. Johnson Group, Inc.,* 615 S.W.2d 685 (Tex.1981). This rule has been applied in construction cases where the owner fails to make timely payment to the contractor. *Sage Street Assoc. v. Northdale Const.,* 809 S.W.2d 775 (Tex.App.—Houston [14th Dist.] 1991), *aff'd in part, rev'd and remanded in part on other grounds,* 863 S.W.2d 438 (Tex.1993); *Texas Bank & Trust Co. v. Campbell Bros., Inc.,* 569 S.W.2d 35 (Tex.Civ.App.—Dallas 1978, writ dism'd). In *Texas Bank & Trust Co.,* an owner was not entitled to recover the cost of completion from a contractor, and the contractor was entitled to walk off the job, based upon the jury's finding that the owner had failed to timely pay the contractor's monthly pay application. *Texas Bank & Trust Co.,* 569 S.W.2d at 40. In *Sage Street Assoc.,* the

court determined that a contractor was within its rights to stop work where an owner refused to permit him to proceed, failed to provide the required means to complete the contract and/or failed to make payments provided by the contract. *Sage Street Assoc.,* 809 S.W.2d at 777.

■■■ Essential elements in a suit for breach of contract are the existence of a contract, performance by the plaintiff, breach by the defendant and damages as a result of such breach. *See Landrum v. Devenport,* 616 S.W.2d 359, 361 (Tex.Civ.App.—Texarkana 1981, no writ); *Stegman v. Chavers,* 704 S.W.2d 793, 795 (Tex.App.—Dallas 1985, no writ). Argee's failure to perform its obligations under the Dayton Subcontract, not preceded by any breaches by Solis, negates the performance element of Argee's action against Solis. We find no legal basis upon which to support the jury's award of $28,-853.00 favoring Argee.

Redundant perhaps, but noteworthy, is whether equitable consideration should be afforded Argee regarding these offset damages. We think not, for such offset results in double recovery by Argee. The amount of damages found by the jury in Question No. 11, $28,853.00, corresponds directly to the total of the amounts paid by Argee to Solis' laborers, $9,853.00, and suppliers, $19,-000.00. In calculating his damages on the Dayton Project, Solis allowed credit for the $28,853.00 in payments by Argee. Solis calculated his damages on the Dayton Project, excluding additional expenses, to be $102,-096.00. The jury determined that the amount of extra work done by Solis was $38,514.00, which corresponded to the amount contained in Solis' damage summary. However, the jury determined Solis' remaining contract damages on the Dayton Project were only $36,682.00, less than Solis' contract damages of $63,582.00 (computed by subtracting $38,514.00 in extra work from $102,096.00). It must follow that the jury deducted the credit for Argee's payment to Solis' laborers and suppliers in the amount of $28,853.00 and made additional deductions in determining Solis' contract damages on the Dayton Project. We find neither legal

nor equitable support for these offset damages. In reaching this determination, we reverse the trial court's judgment granting an offset of $28,853.00 to Argee and render this Court's judgment that Argee take nothing by way of offset for damages awarded Solis on the Dayton Project. Appellants' points of error ten and eleven are overruled. Cross-appellants points of error five and six are sustained.

In point of error twelve, Argee and Seaboard contend that the trial court erred in overruling Seaboard's Motion For Directed Verdict and Argee and Seaboard's Motion to Disregard Jury Findings because the jury's answer to Question No. 23 is immaterial, since Solis has not complied with the requirements of the McGregor Act and thus, has not perfected a bond claim.

Jury Question No. 23 reads as follows:

Did SOLIS perfect his claim against ARGEE and SEABOARD SURETY COMPANY by giving notice to ARGEE and SEABOARD before October 8, 1989 for work performed during June, July and August of 1989 in the amounts shown on the projects listed below?

Answer "Yes" or "No."

(1) Snyder Project for $42,229

Answer: Yes

(2) Dayton Project for $53,024

Answer: Yes

(3) Woodville Project for $138,955

Answer: Yes

ALLIED "perfected a claim" on the bond if it performed all of the following or all of the following have occurred.

(1) SOLIS must actually have furnished the labor and materials for which payment is claimed; and

(2) The notice must have been accompanied by:

(a) a sworn statement of account stating in substance that the amount claimed is just and correct and that all just and lawful offsets, payments, and credits known to SOLIS have been allowed, and include therein the amount of any retainage or retainages applicable to

the account that have not become due by virtue of the terms of the Subcontract; or

(b) a true copy of the subcontract agreement with notice of the value of partial completion.

In point of error twelve, Argee and Seaboard contend that Solis violated several of the statutory requirements established by TEX.REV.CIV. STAT. ANN. art. 5160 (Vernon 1987)[1] (hereinafter "McGregor Act"), which are conditions precedent to recovery.

■■■ Section B(a) of the McGregor Act requires subcontractors seeking recovery under the act to give written notice of claims "within ninety (90) days after the 10th day of the month next following each month in which the labor was done or performed...." This notice requirement is not a mere statute of limitations but is a substantive condition precedent to the existence of a cause of action. *See Bunch Electric Company v. Tex–Craft Builders, Inc.,* 480 S.W.2d 42, 45 (Tex.Civ.App.—Tyler 1972, no writ). At trial, Solis' notices of claim for the Snyder and Dayton Projects were admitted into evidence, both dated September 7, 1989. According to the ninety (90) day notice rule under the McGregor Act, such notices would only be effective for work performed in or after May of 1989. Thus, all amounts for extra work listed on the Snyder notice of claims and some of the extra work items in the Dayton notice of claims are barred, as a matter of law, by the provisions of the McGregor Act. Appellants contend that Frank Solis admitted the untimely nature of portions of his claims. Argee and Seaboard contend that such false information should disallow such notices as a matter of law.

■■■ The proper legislative purpose behind the McGregor Act is to protect claimants who supply labor and material in the construction of public works, and to provide a simple and direct method of giving notice and perfecting claims. *See City of LaPorte v. Taylor,* 836 S.W.2d 829, 832 (Tex.App.— Houston [1st Dist.] 1992, no writ); *Baxter Construction Co., Inc. v. Hou–Tex Products,*

1. Repealed 1993, for current *see* TEX. GOV'T CODE ANN. §§ 2253.001 et seq. (Vernon Pamph.1995).

718 S.W.2d 355, 357–358 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The McGregor Act is highly remedial and should receive the most comprehensive and liberal construction possible in order to accomplish its purposes. *City of LaPorte,* 836 S.W.2d at 832; *Featherlite Building Products v. Constructors Unlimited, Inc.,* 714 S.W.2d 68, 69 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *United Benefit Fire Ins. Co. v. Metropolitan Plumbing Co.,* 363 S.W.2d 843, 847 (Tex.Civ.App.—El Paso 1962, no writ). We do not perceive the legislative purpose behind the McGregor Act to be that of creating technical tricks, traps and stumbling blocks to the filing of legitimate notices of claims.

■ During trial, Solis' attorney stipulated on the record that certain claims for work performed prior to June were erroneously contained within the notices and untimely. This stipulation and fact standing alone does not bar Solis' timely claim. *See Sims v. William S. Baker, Inc.,* 568 S.W.2d 725 (Tex.Civ.App.—Texarkana 1978).

■ From the record, it appears that Solis' claims listed in his notices are based upon pay application estimation. The use of estimates of work completed is a valid means of perfecting bond claims under the act. *See Sims,* 568 S.W.2d at 730; *United Benefit Fire Ins. Co.,* 363 S.W.2d at 850. In the *United Benefit Fire Ins. Co.* case, estimates of work performed were sufficient to perfect a bond claim even where the trial court determined that the estimates included in the claims were "rough" and generally over-estimated the value of the work performed. *United Benefit Fire Ins. Co.,* 363 S.W.2d at 850.

■ Compliance with the notice provision of the McGregor Act requires that labor and material must be described in such a manner as to be reasonably identified. *Sims,* 568 S.W.2d at 730. The test employed is whether the description given reasonably identifies the work to the prime contractor and the surety. Solis attached documents to his notices of bond claims which detailed the areas in which materials and labor were provided to Argee. This description reasonably identified the work to Argee and Seaboard. Duplicate amounts of retainage were contained in Solis' notice of claim and notices of unpaid retainage for both the Dayton and Snyder Projects. Solis contends that this was an accounting error and did not constitute a willful filing of false and fraudulent claims as asserted by Argee. Frank Solis testified that this was a mistake and not an attempt on his behalf to recover more than he was entitled.

The trial court disregarded the jury's findings concerning the Woodville Project for $138,955.00, but refused to overturn the jury's findings on the Snyder and Dayton Projects. Solis makes no issue as to the trial court's disregarding of the findings relating to the Woodville Project.

In view of the remedial nature of the notice provisions contained in the McGregor Act, we find no error in the trial court's overruling of Seaboard's Motion For Directed Verdict nor in the overruling of Argee and Seaboard's Motion to Disregard Jury Findings. Solis substantially complied with the notice provisions thereby properly perfecting his claim against the Seaboard Surety Company. Appellants' point of error twelve is overruled.

Appellants' points of error 13 and 14 contend trial court error in submitting Jury Question 23 over Argee and Seaboard's objections and in overruling Argee and Seaboard's Motion to Disregard Jury's Answer and Motion For New Trial because Question 23 improperly suggested a value for a disputed claim thereby constituting impermissible comment on the weight of the evidence. Point of error 14 further complains that the instructions accompanying Question 23 improperly defined perfection of a payment bond claim.

■ Question 23 inquired: "Did Solis perfect his claim against Argee and Seaboard Surety Company by giving notice to Argee and Seaboard before October 8, 1989 for work performed during June, July and August 1989 in the amounts shown on the projects listed below?" The question then inquired as to whether Solis perfected his bond claims against Argee and Seaboard Surety

Company for $42,229.00 on the Snyder Project, $53,024.00 on the Dayton Project and $138,955.00 on the Woodville Project. Argee and Seaboard contend that the question is improper because it states specific dollar amounts of Solis' claim, thus suggesting the response the jury should make. Argee further contends that since these issues were in dispute by the parties, the court's error in instructing the jury in this manner caused the rendition of an improper verdict. Specifically, Argee's objection stated that the question was erroneous because "it does not require the jury to determine whether the just and lawful offsets have been allowed." Argee did not object on the basis that Question 23 constituted an improper comment on the weight of the evidence. Our question is whether or not Argee's objection was specific enough to properly apprise the trial court of potential charge error. One test for determining whether Argee's objection was sufficient is whether it was "apparent that the trial court, though fully cognizant of the ground of complaint," nevertheless chose deliberately to overrule it. *See Bell v. Missouri–Kansas–Texas Railroad*, 334 S.W.2d 513, 516 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.).

The primary purpose of TEX.R. CIV. P. 274, is that of requiring the complaining party to specifically and distinctly point out to the trial court the objectionable matter and the grounds of the objection. The intent of Rule 274 is to prevent the trial judge from being ambushed with vague and indefinite objections and to give the court fair opportunity to correct any errors. *See Texas Farmers Ins. Co. v. Soriano*, 844 S.W.2d 808, 823 (Tex. App.—San Antonio 1992), *rev'd on other grounds*, 881 S.W.2d 312 (Tex.1994). Argee and Seaboard did not specifically tell the trial court that the submission of Question 23 constituted an impermissible comment on the weight of the evidence. Appellants' objection, "it does not require the jury to determine whether the just and lawful offsets have been allowed," did not apprise the trial court of comment. In truth and in fact, the instructions accompanying Jury Question 23 provided that the notices given by Solis must have been accompanied by: "a sworn statement of account stating in substance that the amount claimed is just and correct and that all just and lawful offsets, payments, and credits known to Solis have been allowed...." Thus, it is clear that the jury was indeed allowed to determine whether the just and lawful offsets had been allowed.

Regarding appellants' objection that the instructions accompanying Jury Question No. 23 improperly defined perfection of a payment bond claim, we disagree. Appellants complain that the instruction was improper because it failed to "include the requirements that the labor and materials for which payment was claimed must have been included within the price of the subcontract in accordance with McGregor Act Subsection C(c), that the labor and materials furnished by Solis must have been provided in compliance with the plans and specifications, and that Solis must have actually given Argee credit for offsets." The actual instruction given by the trial court is as follows:

ALLIED "perfected a claim" on the bond if it performed all of the following or all of the following have occurred.

(1) SOLIS must actually have furnished the labor and materials for which payment is claimed; and

(2) The notice must have been accompanied by:

(a) a sworn statement of account stating in substance that the amount claimed is just and correct and that all just and lawful offsets, payments, and credits known to SOLIS have been allowed, and include therein the amount of any retainage or retainages applicable to the account that have not become due by virtue of the terms of the Subcontract; or

(b) a true copy of the subcontract agreement with notice of the value of partial completion.

■ We hold the trial court's instructions contained in Jury Question No. 23 to be sufficient instructions to comply with those elements needed for perfection of claim on a payment bond pursuant to the McGregor Act. TEX.REV.CIV. STAT. ANN. art. 5160 (Vernon 1987). Appellants' points of error thirteen and fourteen are overruled.

Appellants' point of error fifteen contends that the trial court erred in overruling Argee's Motion For Directed Verdict on the issue of conversion, Argee's objection to the charge, and Argee and Seaboard's Motion For JNOV and Motion to Disregard the Jury's Responses to Question Nos. 16 and 17 because Argee's use of Solis' equipment was privileged under the provisions of the Dayton and Woodville Subcontracts as a matter of law.

In response to Jury Question No. 16, the jury found that Argee wrongfully exercised dominion and control over Solis' equipment at the Woodville and Dayton Projects. The jury determined that as a result of Argee's wrongful exercise of dominion and control over Solis' equipment that Solis suffered actual damages of $30,000.00 as a direct result of this wrongful conversion.

Evidence at trial showed that Argee summoned Solis' employees to the parking lot at both the Dayton and Woodville job sites and informed them that they would be unable to return to the job site. On the Woodville job site, Argee called the Texas Highway Patrol and sheriff requesting that they remain outside the gates in order to keep Solis' employees from gaining access to the job site. Article 24 of the Subcontracts allowed Argee to enter upon the premises and take possession of all the materials, supplies, tools, equipment, and appliances of the subcontractor in the event of a breach. Article 24 however, only allowed Argee to impound Solis' equipment upon three days notice and only that equipment necessary for the completion of the work. Evidence records show that Argee did not wait the required three day period before impounding the equipment. Argee, in its brief, suggests that there was "virtually no equipment belonging to Solis on the Dayton and Woodville Projects which Argee could have used to finish the work which was to have been performed by Solis." Evidence of custom within the construction industry was to the effect that a contractor is only to seize the subcontractor's equipment necessary to ensure that the work is completed in a timely fashion and which cannot be readily replaced from other sources. Argee failed to comply with the requirements of Article 24 and with industry customs when it impounded Solis' equipment. Argee contends by brief that Solis' employees were given an opportunity to remove their equipment from the job site, however evidence introduced at trial indicates that Argee, in fact, never returned most of the equipment owned by Solis. Evidence shows that Solis was forced to hire a truck driver on two different occasions to drive from Abilene, Texas, to the Woodville job site in an attempt to retrieve two rented forklifts because Argee employees refused to allow the driver access to the job site on the first trip. Evidence revealed that although the truck driver was ultimately successful in retrieving the equipment, the forklifts were returned in an extensively damaged state.

■ Conversion consists of the unauthorized and unlawful exercise of dominion and control over property inconsistent with, or to the exclusion of, another's superior rights in that property. *See Vickery v. Texas Carpet Co., Inc.*, 792 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Where a party proves that he has a superior title or is entitled to the property pursuant to an agreement, his actions are privileged and an action for conversion cannot be maintained. *Enduro Oil Co. v. Parish & Ellison*, 834 S.W.2d 547, 549 (Tex.App.—Houston [14th Dist.] 1992, writ denied). This privilege is not absolute, but qualified and may be maintained upon a showing that the actions constitute a bona fide exercise of that party's rights or that party has an equal or superior right in the subject matter to that of the other party. *See Enduro Oil*, 834 S.W.2d at 549.

■ We think it a paramount consideration on this issue that it was Argee who breached the subcontract on the Dayton Project. Although Article 24 allows Argee to take possession and control of certain equipment, supplies, materials, etc., in the event of a breach, it certainly cannot be read to mean that Argee be allowed to benefit from its own wrongful breach of subcontract. We are of the opinion that Argee's breach of the subcontract rendered Argee incapable of exercising or engaging in a bona fide exercise of its rights under the contract. It was Argee

which failed to act pursuant to the contractual agreements and as such its exercise of dominion and control over Solis' equipment was wrongful and did constitute conversion. We hold that the trial court properly and correctly overruled Argee's Motion For Directed Verdict on the issue of conversion, Argee and Seaboard's Motion For JNOV and Motion to Disregard Jury's Responses to Question Nos. 16 and 17 in that Argee's use of Solis' equipment was not privileged under the provisions of the Dayton and Woodville Subcontracts. Appellants' point of error fifteen is overruled.

Point of error sixteen contends that the trial court erred in computing prejudgment interest at the rate of ten percent (10%) per annum for contract balance damages awarded to Solis because prejudgment interest on such damage is limited to six percent (6%) per annum under TEX.REV.CIV. STAT. ANN. art. 5069–1.03 (Vernon 1987). The trial court entered judgment awarding Solis prejudgment interest against Seaboard at the rate of six percent (6%) per annum and against Argee at the rate of ten percent (10%) simple interest per annum. Solis contends that the court should have awarded prejudgment interest at the rate of 10% per annum, compounded annually against both Seaboard and Argee. In considering appellants' point of error sixteen, we also consider cross-appellants' points of error nine through fifteen which also address the trial court's award of prejudgment interest.

Solis, by his cross-points nine, ten, eleven and twelve contends that the trial court erred in rendering and entering judgment awarding Solis damages and prejudgment interest against Seaboard jointly and severally with Argee, in the amount of $59,694.00. Cross-point ten complains that the trial court erred in failing to render and enter judgment awarding Solis actual damages of $95,253.00 and prejudgment interest against Seaboard on actual damages at the rate of ten percent (10%) per annum, compounded annually. Cross-point twelve complains of error in rendering and entering judgment awarding Solis prejudgment interest against Seaboard at the rate of six percent (6%) per annum.

The jury determined that Solis perfected his bond claims against Seaboard and Argee. The trial court declined to award the measure of damages found in favor of Solis. On the Snyder Project, Solis perfected claims in the amount of $42,229.00. On the Dayton Project, Solis' claim was perfected for $53,024.00.

In response to Question No. 23(1), the jury determined a bond claim in the amount of $42,229.00 on the Snyder Project. In response to Question No. 1, the jury found a balance due on the Snyder Subcontract of $43,983.00. Based on these two findings, the trial court allowed a recovery of $42,229.00 against Seaboard for the Snyder Project. We find this recovery to be consistent with Section C(c) of the McGregor Act due to the full amount of the bond claim being less than the contract balance due.

In response to Question No. 23(2), the jury found a bond claim in the amount of $53,024.00 on the Dayton Project. In response to Question No. 15(A), the jury awarded $36,682.00 for contract price less expenses on the Dayton Project. Our trial court used this figure as the bond claim amount and reduced same based on jury response to Question No. 11, awarding $28,853.00 to Argee for Solis' failure to comply with the Dayton Subcontract. Previously, under appellants' points of error ten and eleven, we determined that this $28,853.00 offset favoring Argee was improper. The trial court erred in subtracting the $28,853.00 from the jury award of $36,682.00 representing contract price less expenses on the Dayton Project. Solis was entitled to recover against Seaboard, the sum of $36,682.00 plus prejudgment interest.

Solis claims that prejudgment interest on his bond claim recovery should be at the rate of ten percent (10%) per annum, compounded annually, beginning November 6, 1989, to date of judgment. We disagree with Solis' contention. TEX.REV.CIV. STAT. ANN. art. 5069–1.03 (Vernon 1987) provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing

on the thirtieth (30th) day from and after the time when the sum is due and payable.

Solis positions that because the damages recoverable against Seaboard were not ascertainable from the face of the subcontract agreements, the trial court should have awarded prejudgment interest at the rate of ten percent (10%) per annum, compounded annually, on the bond claim recovery damages. Solis cites *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929 (Tex.1988). *Perry Roofing* operates as an extension of the Supreme Court's reasoning and ruling in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985) (awarding prejudgment interest at rate of ten percent compounded daily on wrongful death, personal injury and survival actions in order to encourage settlements, restore equity to this area of law and make injured parties whole). *Allied Chemical Co. v. DeHaven*, 824 S.W.2d 257, 266 (Tex.App.—Houston [14th Dist.] 1992, no writ).

*Perry Roofing* considered whether the ten percent (10%) *Cavnar* prejudgment interest should be extended to contract cases wherein the amount of damages are not ascertainable. The *Perry Roofing* majority determined that the holding in *Cavnar* applies to breach of contract actions wherein damages are unascertainable. *Perry Roofing*, 744 S.W.2d at 931.

 Damages are ascertainable if the contract sets out a measure with which damages can be ascertained with reasonable certainty. *See Imperial Sugar Co. v. Torrans*, 604 S.W.2d 73, 74 (Tex.1980); *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 103 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.). The damages awarded by the jury in our case are consistent with the breach of contract evidence and are ascertainable from the contracts entered into evidence in this case. Under these circumstances the statutory six percent (6%) simple interest rate should apply. *See Allied Chemical Co. v. DeHaven*, 824 S.W.2d at 267. In the case at hand, our trial court had no discretion to increase the rate of prejudgment interest recoverable under Article 5069–1.03. *See Allied Chemical Co.*, 824 S.W.2d at 267; *San Antonio Villa Del Sol v.*

*Miller*, 761 S.W.2d 460, 462 (Tex.App.—San Antonio 1988, no writ).

Thus, as to all damages awarded Solis both against Seaboard and Argee, prejudgment interest of six percent (6%) per annum should apply. The trial court's judgment awarding ten percent (10%) prejudgment interest as to Solis' recovery against Argee is hereby modified to limit prejudgment interest on the award respective of damages to a rate of six percent (6%) simple interest. Our authority in so doing is *Allied Chemical Co.*, 824 S.W.2d at 267. The damages awarded by the jury in our case are consistent with the breach of contract evidence and are ascertainable from the contract entered into evidence in this case. For reason stated, we overrule cross-appellants' points of error nine, (as modified), ten, eleven, twelve, thirteen, fourteen and fifteen. Appellants' point of error sixteen is sustained.

### POINTS OF ERROR OF SOLIS AS CROSS–APPELLANT

Solis brings twenty-four cross-points of error, points five, six, nine, ten, eleven, twelve, thirteen, fourteen and fifteen having been previously addressed under and in response to Argee's points of error. We now pursue a review of Solis' remaining points.

Cross-points one and two contend trial court error in failing to render and enter judgment awarding damages to Solis against Argee for additional expenses relating to the Dayton and Snyder Projects. Further, Solis contends that the trial court erred in failing to vacate and modify its judgment to award these damages to Solis. Argee presents a cross-point to these cross-points, wherein they mention there is no evidence or factually insufficient evidence to support the jury's finding of delay damages in response to Question 9.

In Jury Question 8, the jury found that Solis had incurred additional expenses in the performance of work relating to the Snyder and Dayton Projects, such additional expenses caused by Argee's: 1) failure to timely deliver materials; 2) failure to deliver properly fabricated materials; 3) failure to provide proper access to the site; and 4)

failure to coordinate and resolve the conflicts between the work of other subcontractors and the work of Solis. In Question No. 9, the jury determined that these additional expenses were; $79,191.00 on the Snyder Project and $95,685.00 on the Dayton Project. Regarding the damage issue, the trial court gave the following instruction:

> In answering this question, consider the following elements of damage, if any, and none other: The additional costs incurred by Solis to perform his work on the project which costs were caused by disruptions, out of sequence work, interruptions, or inefficiencies in the utilization of Solis' labor caused by Argee's failure to timely deliver materials, failure to deliver properly fabricated materials, failure to provide proper access to the site, or failure to coordinate and resolve the conflicts between the work of other subcontractors and the work of Solis.

The trial court disregarded the jury's answer to this damage issue.

It is Solis' position that in every construction contract, the law implies an obligation on the part of the contractor to perform his portion of the work in such a manner that the subcontractor's ability to perform his work is not prevented or impaired, citing *Hyatt Cheek Builders–Engineers Co. v. The Board of Regents of the University of Texas System,* 607 S.W.2d 258, 267 (Tex.Civ.App.— Texarkana 1980, writ dism'd). Further, Solis argues that an implied promise exists that a contractor will do nothing to prevent, interfere or hinder the subcontractor in the performance of the contract or increase the cost of the contract, citing *Citizens National Bank of Orlando v. Vitt,* 367 F.2d 541, 544 (5th Cir.1966). It is obvious from the record in this case that the jury was convinced that Argee failed in several regards to comply with his end of the contract thereby wrongfully interfering with Solis' ability to perform his end of the contract.

The trial court disregarded the damage findings determined in Question No. 9, but did not disregard the various findings of interference in response to Question No. 8.

Argee defends the trial court by relying upon the "no damages for delay clause" contained in the subcontracts.

Contractor, except as provided for in this paragraph 8(a) and (b), shall not be liable to the Subcontractor for delay to Subcontractor's work by the act, neglect or default of the Owner, Contractor, or the Architect, or by reason of fire, act of God, riot, strike, action of workmen or others, or any cause beyond Contractor's control.

(a) The Contractor will be liable to the Subcontractor for damages incurred as a result of any acts, or failures to act, by the Owner which delays the Work, only if and to the extent the Owner is liable and pays the Contractor for such damages.

(b) Should Contractor delay Subcontractor in the work, Subcontractor shall receive an extension of time for completion equal to delay if a written claim is made within forty-eight hours, and under no circumstances shall Contractor be liable to pay to Subcontractor any compensation for such Contractor-caused delays.

Argee contends that under Paragraph 8(b), Solis had a duty to notify Argee of any circumstances whereby Argee delayed Solis' work by filing a written claim within forty-eight hours and therefore Solis cannot collect damages which are alleged to result from a delay caused by Argee because Solis never gave Argee written notice of the delay-causing events, citing *City of Houston v. Gribble,* 542 S.W.2d 242 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). Argee further contends that the trial court's action in disregarding the jury's answer to Question No. 9 is supported by the jury's answer to Question No. 22(A) and 22(B), wherein the jury determined that Solis did not submit a written claim to Argee within forty-eight hours nor did the State of Texas grant Argee an extension of time on the delay-causing events.

Argee moved to disregard the finding on the basis that there was no evidence to support it and that it was immaterial. The trial court's refusal to enter judgment awarding Solis $174,876.00 as additional expenses relating to the Dayton and Snyder Projects is

unexplained. Indeed, the evidence is probatively replete as to hindrances, interruptions and disruptions caused Solis by Argee.

Frank Solis testified to material supply deficiencies, lack of coordination of subcontractors, and problems arising from the misfabrication of material. Fred Solis testified regarding problems with the delivery of materials, misfabrication of materials, and the lack of coordination of subcontractors and scheduling problems caused by Argee. Solis' letters discussing the problems were admitted into evidence. These problems were confirmed by Solis' employees, by the State's representative on the Snyder Project, and by Argee's own employees.

Solis' damages were quantified and computed by Solis' expert, Bob McCally. McCally's analysis and report was admitted into evidence and supports the amount of damages found by the jury in Question 9.

 We conclude legally and factually sufficient evidence was admitted to support the jury's findings that Solis sustained damages arising out of disruptions, interruptions, out-of-sequence work, and inefficiencies in the utilization of labor caused by Argee's acts.

It appears to this Court that the court below determined as a matter of law that Argee should escape the jury's findings, via the "no damages for delay" clause and/or Solis' failure to give Argee forty-eight hour written notice of Argee causing delay in Solis' work. Solis contends that the "no damages for delay" clause is unenforceable as a matter of law as mandated by our Texas Supreme Court in *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993). Argee contends that Solis cannot not raise application of the fair notice requirement and express negligence doctrine before this Court of Appeals since Solis failed to do so at the trial level. Argee contends that to do so is contrary to Rule 52(a) of the Texas Rules of Appellate Procedure, in that Solis is requesting this Court to entertain new grounds for disregarding Subcontract provisions. Alternatively, Argee contends that neither *Fisk Electric Company v. Constructors & Associates, Inc.*, 888 S.W.2d 813 (Tex. 1994) nor *Dresser* stand for the proposition

asserted by Solis in that these cases are distinguishable from the instant appeal because they involve negligence causes of action. The best we can determine from Argee's position is that the law set forth in *Fisk* and *Dresser*, addressing negligence causes of action, should not be extended to breach of contract cases.

First, Rule 52(a) of the Texas Rules of Appellate Procedure generally requires a party to present an objection, request, or motion to the trial court and obtain a ruling thereon in order to preserve a complaint for appellate review. Cases cited by Argee relate to a party's waiver of its right to complain on appeal by failure to either object to the trial court's charge, or present evidence showing a justiciable interest. We find, however, that the record before us reflects Solis preserved the issue for appellate review. Contained in the transcript is an instrument filed by Solis on February 18, 1993, entitled, "Motion To Modify Judgment." Under paragraph IV, subparagraph (a), the following pertinent part appears:

> Under the findings of the jury, the damages for extra expenses are not damages for delay within the meaning of the "no damages for delay" clause. Even if the Court were to construe the damages as delay damages, they fall within two exceptions to "no damages for delay" clauses.

In *Emerson v. Tunnell*, 793 S.W.2d 947, 948 (Tex.1990), the Texas Supreme Court held that a post-verdict motion for judgment on the verdict preserved error for appellate review when the trial court entered judgment for the movant but for less than the verdict. We find, therefore, that Solis did preserve the issues raised in cross-points one and two.

*Dresser Industries* is an oil and gas case which involved a "release" of liability for negligence occurring subsequent to the execution of the written release. Our Supreme Court determined whether the fair notice requirements applicable to indemnity agreements also applied to releases which operate to relieve a party in advance for responsibility for its own negligence, and whether compliance with the fair notice requirement is a question of law for the court or a question of

fact for the jury. Our case is analogous in that we must determine whether a contracting party, at the time of entering a contract, can prospectively excuse its own breach or breaches by the inclusion of a "no damages for delay" clause. Further, is the interpretation of a "no damages for delay" clause a question of law or a question of fact?

The jury in *Dresser*, found that Page's damages were caused forty percent (40%) by Houston Fishing, ten percent (10%) by Dresser, and fifty percent (50%) by Page, upon which finding the trial court rendered judgment against both Dresser and Houston Fishing. On appeal, the Waco Court upheld the award against Dresser reversing the award against Houston Fishing. The Waco Court reasoned that the Dresser contract contained an indemnity clause which did not bar Page's recovery because an indemnity clause could not operate to extinguish a claim between the parties to a suit. The Waco Court reversed the award against Houston Fishing because the Houston Fishing contract contained a release which did operate to bar Page's recovery. That intermediate appellate court determined that while a release might be subject to the conspicuousness requirement, Page had waived such an argument by failing to request jury findings on such a factual issue.

Justice Vance in the Waco Court of Appeals dissented in part on the basis and reasoning that the fair notice requirements of conspicuousness and express negligence applied to releases as well as indemnity agreements, and thus the release in the Houston Fishing contract should not bar Page's recovery since the release was not conspicuous as a matter of law.

In addressing these issues, our Supreme Court stated, "It is important to note that our discussion today is limited solely to those types of releases which relieve a party in advance of liability for its own negligence." *Dresser*, 853 S.W.2d at 507. Though attempting to limit its holding to questions of negligence, the Supreme Court discussed the contract between Dresser and Page, and the contract between Page and Houston Fishing. We believe that the issue in *Dresser*, relevant to this appeal, is whether the fair notice requirements were complied with in these two contracts. *Id.* at 509. In *Dresser*, as in the case before this Court, a party is attempting to avoid responsibility or liability by use of a release clause in a contract which does not meet the fair notice requirements subsequently determined by *Dresser*.

In *Dresser*, Justice Gonzalez defines with some detail the distinction between a release or hold harmless agreement and an indemnity agreement. Interestingly, the *Dresser* Court touted Justice Vance's dissent wherein it stated that, "these agreements, whether labeled as indemnity agreements, releases, exculpatory agreements, or waivers, all operate to transfer risk." *Id.* at 508. The *Dresser* Court points out that most contractual provisions operate to transfer risk however, indemnity agreements, releases, exculpatory agreements or waivers are used to exculpate a party from consequences of its own negligence. We find no rational reason for not viewing "no damages for delay" clauses in that same light, i.e., the extraordinary shifting of risk. *Dresser* recognized that fair notice requirements had only been applied to indemnity agreements and not yet extended as applicable to releases that relieve a party in advance for its own negligence. *Id.* at 508; citing *Getty Oil Co. v. Ins. Co. of North America*, 845 S.W.2d 794, 806 (Tex.1992), *cert. denied*, 510 U.S. 820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993). In addressing this issue, Justice Gonzalez stated: "However, we can discern no reason to fail to afford the fair notice protections to a party entering into a release when the protections have been held to apply to indemnity agreements and both have the same effect. The policy considerations underlying the enforcement of indemnity clauses to warrant the application of the fair notice requirements to releases as well." (sic) *Dresser*, 853 S.W.2d at 508–509.

In view of such expansion, we find no justifiably explainable reason for not equating the "no damages for delay" clause contained in paragraph 8 of the Subcontracts to a release in advance of potential wrongful conduct, in our case, breach of contract. *Dresser* defines a release as:

A contractual arrangement whereby one party assumes the liability inherent in a

situation, thereby relieving the other party of responsibility. . . . [An][a]greement or contract in which one party agrees to hold the other without responsibility for damage or other liability arising out of the transaction involved.

*Id.* at 508.

 The provisions contained in paragraph 8 of our subcontracts attempt to exculpate Argee in advance for virtually any act Argee determines to commit or omit including but not limited to liability for its own negligence. We believe and hold that paragraph 8 fails to satisfy the standard for conspicuousness adopted in *Dresser*, and set forth in TEX. BUS. & COM.CODE ANN. § 1.201(10) (Vernon 1994). The question of whether or not the provisions of paragraph 8 of these subcontracts constitute fair notice and conspicuousness is a question of law. A clause is conspicuous when a reasonable person, against whom that clause is to operate, ought to have notice of it. The "no damages for delay" clause in our subcontracts is inconspicuously contained in the midst of a multipage, single spaced contract. The clause contains no heading or warning, nor is same typed in conspicuous form. We find nothing of a conspicuous nature, regarding paragraph 8 of these subcontracts, which would lead a reasonable contracting party to notice the potential adverse and devastating effect of such an agreement. We do not say that a party to a contract may not exculpate itself prospectively for its own conduct, whether same be intentional or unintentional. However, we do hold that the "no damages for delay" clause set forth in paragraph 8 of the subcontracts under consideration violates fair notice requirements of conspicuousness. We therefore hold that paragraph 8 of the subcontracts between Argee and Solis is unenforceable as a matter of law.

In view of this holding, we determine that the damages assessed by the jury in response to Question 9 are sustainable for reason that such damages naturally flowed from Argee's interference and disruption of Solis' obligations under the contract. The trial court instructed the jury to consider only damages flowing from disruptions, out of sequence work, interruptions and inefficiencies in the utilization of labor caused by Argee's failure to timely deliver materials, failure to deliver properly fabricated materials, failure to provide proper access to the site, and failure to coordinate and resolve the conflict between the work and other subcontractors.

Should it be subsequently determined that the reasoning applied in *Dresser* should not be extended to "no damages for delay" clauses of contracts, as affirmatively held by this Court, there exists yet other prevailing reasons why the jury's answer to Question 9 should be upheld.

Texas has previously recognized certain exceptions to the enforcement of "no damage for delay" provisions. These are: 1) delays which were not intended or contemplated by the parties to be within the purview of the contractual provisions; 2) delays resulting from fraud, misrepresentation, or other bad faith on the part of one seeking the benefits of such provisions; 3) delays which have extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; and 4) delays not within the specifically enumerated delays to which "no damages for delay" clause applies. *See City of Houston v. R.F. Ball Construction Co., Inc.*, 570 S.W.2d 75, 77 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.).

The jury below determined that Solis incurred additional expenses in the performance of the work on the Dayton and Snyder Projects, caused by Argee's failure to timely deliver materials, failure to deliver properly fabricated materials, failure to provide proper access to the site, and failure to coordinate or resolve conflicts between the work of other subcontractors and Solis. The jury determined that Solis' failure to continue the work on the Dayton Project was excused by Argee's previous failure to pay Solis. The jury further determined that Argee failed to materially comply with the Dayton subcontract, in failing to timely purchase metal building material, failing to timely submit shop drawings, failure to timely schedule the delivery of materials, failing to coordinate the work of other subcontractors and failing to timely resolve conflicts in plans and specifications. Certainly, and at least, these factual determi-

nations encompass exceptions 1 and 3 stated above.

Furthermore, we find support for exception based upon active interference or other wrongful conduct as applicable to the present case. *See Housing Authority of City of Dallas v. Hubbell,* 325 S.W.2d 880, 891 (Tex.Civ. App.—Dallas 1959, writ ref'd n.r.e.). In *Hubbell,* the Dallas Court determined that damages resulting from delays attributable to arbitrary and capricious acts of the owner did not come within the protection of a "no damages for delay" clause. *Hubbell* defines "arbitrary and capricious" as "willful and unreasoning actions," "without due consideration" and "in disregard of the rights of other parties."

In a final effort to overcome and preclude recovery of additional expenses awarded by the jury, Argee asserts paragraph 28 of the subcontract which provides in part:

> Should subcontractor be wrongfully terminated under this Agreement, the Subcontractor shall be entitled only to be paid a pro-rata percentage of the total Subcontract price, equal to its percent of completion and not for anticipatory profit, damages, or consequential damages.

■■■ . For the same reason we determined to expand the holding in *Dresser* to encompass the requirement for conspicuousness in "no damages for delay" clauses, we hold that such reasoning and purpose should also apply to wrongful termination clauses equally. The wrongful termination clause contained in the present subcontracts amounts to nothing more than attempts to release consequential damages by inconspicuous methods. We conclude that the trial court erred in failing to render and enter judgment awarding damages to Solis against Argee in the amount of $174,876.00 as additional expenses related to the Dayton and Snyder Projects. The trial court further erred in failing to vacate and modify the January 22, 1993, judgment to award such damages to Solis. Cross–Appellant's points of error one and two are sustained and the trial court's judgment is hereby modified accordingly. Argee's cross-cross-point one is overruled.

In cross-points of error three and four, Solis complains of trial court error in failing to render and enter judgment, alternatively failing to vacate and modify judgment, to award Solis damages against Argee in the amount of $150,000.00 for injuries to credit reputation.

The trial court, by letter dated November 30, 1992, advised counsel for Argee and Solis in part as follows:

> Gentlemen:
>
> . . . . .
>
> 5. Solis' claim for damages to credit reputation is barred by the "no damages" clause as well as the wrongful termination clause ...

■■■ Whether the extraordinary shifting of risks regarding contract matters, which exculpates a party from the consequences of its own wrongdoing satisfies the standard of conspicuousness as adopted in *Dresser,* and set forth in Section 1.201(10) of the Texas Business and Commerce Code and the question of whether other such exculpatory efforts satisfy the fair notice and conspicuousness requirement of *Dresser,* constitutes a question of law for the court. The trial court below erred in basing its ruling solely on the existence of the "no damages for delay" clause simply because such clause was contained in the contract.

Our Texas Supreme Court has held that loss of credit is recoverable in a breach of contract suit where such injury is the probable and foreseeable consequence of the breach of contract. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 688 (Tex.1981); *see also Hallmark v. Hand,* 833 S.W.2d 603, 612 (Tex. App.—Corpus Christi 1992, writ denied).

■■■ Obviously, to recover damages for loss or injury to credit reputation, the moving party must produce evidence sufficient to support such a finding. In our case the jury determined that Solis had suffered damages in the sum of $150,000.00 as consequence of Argee's failure to comply with the subcontract. The amount of damages for loss of credit must only be established with a degree of certainty to which it is susceptible. If it is impossible to establish the exact amount of the damages, failure to do so is not a basis

for denying recovery. *See Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 146 (Tex.App.—Dallas 1992), *writ granted to approve settlement,* 843 S.W.2d 486 (Tex. 1993).

 Solis testified that before he contracted with Argee, his workers were paid every Friday and his suppliers were paid on the tenth of every month. Solis testified that he had good credit, was able to pay his bank loans and was able to obtain bonds for his construction jobs. Solis further testified that after the damages caused by Argee, he had no credit and "just went broke." Solis testified that as a result of Argee's actions, he no longer had credit, could not obtain a construction bond, and, therefore, could not obtain any further work. Fred Solis, son of Frank Solis, testified that he worked closely with his father in the family business and that prior to dealing with Argee, his dad had good credit and was able to keep his workers and suppliers paid. After dealing with Argee, his father's credit was ruined and Solis had no credit. Fred Solis testified that Argee's actions caused substantial change to a family business which had been ongoing for 20–30 years. Specifically, Fred Solis testified:

> Well, for one thing, when he didn't pay his suppliers, the word gets out and the people that were working out of Abilene, they came back and they all talked. And it's a bad deal whenever you can't pay your bills.

Frank Solis made a quantification of damages resulting from loss of credit by testifying to an estimated loss of $50,000.00 per year for the three years which elapsed between Argee's actions and the trial. Solis also based his loss of credit reputation upon business experiences prior to dealing with Argee.

In view of our holding herein, the trial court erred in relying on the "no damages for delay" clause and the "wrongful termination" clause as reasons for denying Solis damages which the jury determined resulted from injury to Solis' credit reputation. The foregoing evidence is legally and factually sufficient to support the jury's finding. We hereby modify the trial court's judgment and award to Solis the sum of $150,000.00. Cross-points three and four are sustained. Argee's second cross-cross-point is overruled.

Cross-points of error seven and eight complain of trial court error in failing to render and enter judgment, alternatively in failing to vacate and modify judgment, to award attorneys' fees to Solis against Argee and Seaboard, jointly and severally, in the amount of $168,000.00 for trial preparation and trial, $15,000.00 for appeal to the court of appeals, $10,000.00 for making or responding to an application for writ of error in the Texas Supreme Court, and $5,000.00 in the event a writ of error is granted or heard by the Texas Supreme Court. By cross-cross-point, Argee contends if cross-points seven and eight are sustained, then Argee should also receive its attorneys' fees.

In response to Jury Question 21, it was determined that the reasonable attorneys' fees recoverable by Solis attributable to pursuing his claim in this case against both Argee and Seaboard, was: (a) for preparation and trial, $168,000.00; (b) for an appeal to the court of appeals, $15,000.00; (c) for making or responding to an application of writ of error to the Supreme Court of Texas, $10,000.00; and (d) in the event a writ of error was granted to the Supreme Court of Texas, $5,000.00. In response to Jury Question 20, the jury found Argee's attorneys' fees to be $175,000.00 for preparation at trial, $15,000.00 for appeal to the Court of Appeals, $10,000.00 for application or response to writ of error, and $10,000.00 if writ of error is granted.

The trial court below refused to award attorneys' fees as determined by the jury and stated its reason in paragraph 7 of the previously referenced November 30, 1992, letter, as follows:

> 7. Neither party is entitled to attorney fees. In my opinion, Solis prevailed at Snyder. The cost of completion in a claim of substantial compliance is a part of the claimant's cause and is not a true offset. Neither party can recover at Dayton because both achieved some relief. Argee is entitled by the subcontract to recover at Woodville because Solis did not recover any amount

of its claim. If I could divide the claim I would award Solis' fees at Snyder, neither at Dayton and Argee at Woodville.

The best this Court can determine from the trial court's ruling is that Solis' and Argee's claims for attorneys' fees must fail for failure to segregate such fees between the Snyder, Dayton and Woodville Projects.

Evidence supporting the jury's award of attorneys' fees favoring Solis was elicited and admitted without objection by Seaboard or Argee. Likewise, Question 21 was submitted to the jury without objection or request for a limiting or explanatory instruction. Thus, there was no proper objection before the trial court for Solis' failure to segregate attorneys' fees between the defendants, the three projects, or the various claims and defenses asserted by Solis. It is generally true that where a case involves more than one claim, only fees attributable to authorized claims are recoverable. *See International Sec. Life Ins. Co. v. Finck*, 496 S.W.2d 544, 546–47 (Tex.1973). It is also well settled, that a party failing to object to the failure to segregate attorneys' fees between authorized and unauthorized claims waives any appellate error. *See Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex.1988).

Argee and Seaboard failed to object to the jury question thereby waiving appellate error. *See Home Savings Ass'n. v. Guerra*, 733 S.W.2d 134, 137 (Tex.1987); *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985); *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex.1985). Neither Argee nor Seaboard requested an instruction requiring the jury to consider only attorneys' fees attributable to recoverable claims, thus same was waived. *See Miller v. Patterson*, 537 S.W.2d 360, 364 (Tex.Civ.App.—Fort Worth 1976, no writ).

We sustain cross-appellant's points of error seven and eight and hereby modify the judgment of the trial court by awarding to Solis and against Argee and Seaboard jointly and severally, attorneys' fees in the amount of $168,000.00 for trial preparation and trial, $15,000.00 for appeal to the court of appeals, $10,000.00 for making or responding to an application for writ of error in the Texas Supreme Court, and $5,000.00 in the event a writ of error is granted or heard by the Texas Supreme Court. Since Argee did not prevail on its contract, its third cross-cross-point is overruled.

Cross-appellant's points of error sixteen and seventeen provide that the trial court erred in failing to grant a new trial on Solis' cause of action for wrongful conversion of the equipment on the Dayton and Woodville Projects, further committing error in failing to submit Solis' jury questions, definitions and instructions relating to wrongful conversion of the equipment on the Dayton and Woodville Projects, actual damages and exemplary damages, because the issues were raised by the pleadings and the evidence.

Responding to Question 16, the jury found that Argee wrongfully exercised dominion and control over Solis' equipment at the Woodville and Dayton Projects to the exclusion of and inconsistent with Solis' right of lawful ownership by taking possession of the equipment and failing to return it. The jury determined that Solis suffered actual damages of $30,000.00 as a direct result of Argee's wrongful conversion of Solis' property.

Although the trial court allowed Solis to recover $30,000.00 for the equipment taken, the court refused to submit Solis' tendered questions inquiring as to malice and exemplary damages for Argee's wrongful conversion. Solis preserved this complaint by tendering the question to the court in substantially correct wording as required by and under TEX.R. CIV. P. 278, and obtaining a ruling thereon. By motion for new trial, Solis complained of the court's failure to submit questions pertaining to malice and exemplary damages, same being overruled by the trial court. Solis contends that there was legally sufficient evidence introduced to support an award of exemplary damages with respect to his wrongful conversion theory.

Conversion has been defined as "the unauthorized and unlawful exercise of dominion and control over property inconsistent with or to the exclusion of another's

superior rights in that property." *Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759, 763 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Exemplary damages are recoverable in conversion causes of action where malice is demonstrated. *See Ogle v. Craig,* 464 S.W.2d 95, 97 (Tex.1971); *Southwestern Investment Co. v. Alvarez,* 453 S.W.2d 138, 141 (Tex.1970); *Dennis v. Dial Finance and Thrift Co.,* 401 S.W.2d 803, 805 (Tex.1966). Malice sufficient to support exemplary damages for wrongful conversion may be actual or implied. *See George Thomas Homes, Inc. v. Southwest Tension Systems, Inc.,* 763 S.W.2d 797 (Tex.App.—El Paso 1988, no writ); *Courtesy Pontiac, Inc. v. Ragsdale,* 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.).

Factually, Solis informed Argee that Solis would be unable to meet his payroll obligation due to Argee's failure to pay Solis as required under their contracts. Argee gathered Solis' employees at the Dayton and Woodville sites to the parking lot and informed them that they would not be allowed to return to the job sites. At the Woodville job site, Argee called the Texas Highway Patrol and Sheriff and requested that they stand outside the gate in order to keep Solis' employees from gaining access to the job site. Argee impounded Solis' equipment without making an inventory of the equipment and took no measures to insure that the impounded equipment was kept in a safe manner. According to the evidence, Argee never returned most of the equipment owned by Solis. Argee did eventually return two forklifts leased by Solis; however, said forklifts were extensively damaged. Argee contends that the impounding of Solis' equipment was done pursuant to Paragraph 24 of the Woodville and Dayton Subcontracts. Paragraph 24 of the Subcontracts provides in part as follows:

24. Should Subcontractor at any time breach this Agreement or fail to prosecute the work with promptness, diligence or efficiency, Contractor may, three (3) days after mailing of written notice sent by registered or certified mail or by telegram addressed to Subcontractor at the address set forth at the end of this Subcontract, proceed as follows:

(a) provide such materials, supplies, equipment and/or labor as may be necessary to complete the Work, and deduct the amount so paid from any money due Subcontractor, or

(b) terminate this Agreement and enter upon the premises and take possession, for use in completing the work, all of the materials, supplies, tools, equipment and appliances of the Subcontractor thereon and complete the work. . . .

Argee violated its own agreement by failing to give Solis the three day notice as required by the contract. A reasonable interpretation of the quoted portions of Paragraph 24 would dictate that Argee only seize a subcontractor's equipment necessary to insure that the work be completed in a timely manner where such equipment cannot be readily replaced from other sources. Evidence introduced at trial through Argee's own employees showed that Argee had no use for the impounded equipment and that the equipment was not necessary for the completion of the work.

The trial court is required to submit an issue to the jury if there is any evidence introduced with respect to that issue. *See Huckaby v. Henderson,* 635 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Argee contends that there is no evidence to support an issue or question regarding malice or exemplary damages. We disagree, for a review of the evidence in a light most favorable to the party with the burden of proof, clearly indicates to the contrary. Where there is more than a mere scintilla of evidence tending to support an issue, a trial court may not refuse to submit the issue to the jury even where there is insufficient evidence to support an affirmative finding thereon. *See Ethicon, Inc. v. Parten,* 520 S.W.2d 527, 531 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). We hold that it was error for our trial court to refuse the granting of Solis' Motion For New Trial which requires a remand to the trial court of the evidence and issues relating to conversion and exemplary damage claims. Cross-

appellant's points of error sixteen and seventeen are sustained.

Cross-appellant's point of error eighteen states in the alternative that the trial court erred in failing to render and enter judgment awarding damages to Solis against Argee in the amount of $188,132.00 for the reasonable value of the compensable work performed by Solis on the Dayton Project. Responding to Question 24, the jury determined that the Dayton Subcontract was entered into as a result of mutual mistake of fact which was not waived by Solis. In Questions 25 and 26, the jury determined that Solis performed compensable work on the Dayton Project and that the value of such work was $406,091.00. The trial court disregarded the jury's answers to these three questions. Solis submitted an alternative motion on the verdict electing to recover under a quantum meruit cause of action as to the Dayton Project in order to maximize his recovery. This motion was denied by the trial court. Solis contends that there is legally and factually sufficient evidence to support the jury's findings on Questions 24, 25 and 26 and that the trial court erred in disregarding same.

 The question before this Court is not whether there is legally or factually sufficient evidence but rather, is there a substantive basis for Solis' claim in quantum meruit? Solis' Fifth Amended Counterclaim did not plead mutual mistake as a basis for alternative recovery nor did Solis plead for rescission of the Dayton Contract. A party must specifically plead and pray for the equitable remedy of rescission. *Burnett v. James,* 564 S.W.2d 407, 409 (Tex.Civ.App.—Dallas 1978, writ dism'd). Argee objected to the submission of Question 24 on the grounds that it was not supported by Solis' pleadings. We affirm the trial court's action.

 Alternative recovery in quantum meruit is precluded by the existence of an express contract concerning Solis' work on the Dayton Project even though said contract was breached by Argee. There can be no recovery in quantum meruit where a valid contract exists covering the subject matter. *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80 (Tex.1976), *overruled on other grounds in Sterner v. Mara-*

*thon Oil Co.,* 767 S.W.2d at 690; *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674 (Tex. 1964). Argee objected to the submission of Questions 25 and 26 on the grounds that the existence of an express contract bars recovery in quantum meruit.

 During trial, Solis testified that he had a contract with Argee on the Dayton Project. Solis sent a McGregor Act notice letter to Seaboard concerning the Dayton Project. The existence of the contract is stated in the sworn statement of account included in this notice. The statement of account contained in Solis' McGregor Act notice and claim was sworn to and mailed after Solis' work on the project had ceased. At trial Solis relied on the sworn statement of account as grounds for recovery. We conclude that Solis' admissions of the existence of the Dayton Subcontract in his testimony and in sworn statement of account prevents him from now seeking to have the subcontract rescinded. Argee expressly raised the affirmative defense of waiver and ratification. Solis continued to perform work on the project and sought the benefits of the contract despite his knowledge of all the facts which Solis, at trial, argued as constituting a mutual mistake. Solis' affirmation of the contract through his actions and conduct after knowledge of the facts establishes the defense of waiver and ratification as a matter of law. *See Daniel v. Goesl,* 161 Tex. 490, 341 S.W.2d 892 (1960); *Payne v. Baldock,* 287 S.W.2d 507, 509 (Tex.Civ.App.— Eastland 1956, writ ref'd n.r.e.).

 Furthermore, when Solis made his motion for judgment on the verdict, Solis acknowledged the existence of the subcontract, and elected a remedy at law for breach of contract. When a party moves for judgment on the verdict, the party has affirmed that the part of the jury's findings he relies upon are supported by the evidence. *See Russell v. Dunn Equipment, Inc.,* 712 S.W.2d 542, 545 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Solis cannot reserve the right to attack a judgment entered pursuant to his motion for judgment. *See Litton Industrial Products, Inc. v. Gammage,* 668 S.W.2d 319, 321–22 (Tex.1984).

Cross-appellant's point of error eighteen is overruled and the trial court's disregarding of jury answers to Questions 24, 25 and 26 are affirmed.

Cross-points nineteen, twenty and twenty-one contend trial court error in failing to grant a trial amendment on Solis' cause of action for fraud relating to the Woodville contract, failing to grant a new trial on the fraud action and, failing to submit Solis' jury questions, definitions and instructions on the issue of fraud, actual damages and punitive damages with respect to the Woodville contract.

Solis contends that evidence was introduced at trial without objection as to Solis' claim of fraud with regard to the Woodville contract. In Solis' Fifth Amended Counterclaim, Solis did not plead that Argee fraudulently induced Solis to enter the Woodville contract. Testimony at trial indicates that on August 2, 1989, an Argee employee, Buck Cofrancesco, informed Solis that he would not be paid money owed by Argee on the Dayton and Snyder contracts unless Solis signed the Woodville contract. Solis contended that the Woodville contract was signed in reliance upon Argee's positive assertion that this act was necessary in order for Solis to receive payments owed on the Snyder and Dayton Projects. Solis further contended that even though Solis signed the Woodville contract, Argee failed to tender payments due on the other two projects. Solis contended that damages in the amount of $104,616.00 were incurred as a result of Solis having to commit resources to the Woodville Project. Solis signed the Woodville subcontract on August 2, 1989, and then terminated work on all three projects two days later, August 4, 1989. Argee contends that Solis could not have incurred, in two days, the $104,616.00 in damages which he now claims. The question before this Court is whether Solis was improperly and through error denied the opportunity to submit the fraud question to the jury.

■ Solis filed a motion for leave to file a trial amendment which was denied by the trial court. Texas Rules of Civil Procedure 63 and 66 leave little discretion for a trial court to refuse a motion to amend. Rule 63, regarding leave to amend, states in part: "[L]eave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party." In this regard an opposing party may present evidence of surprise or prejudice or assert that the amendment brings in a new cause of action or defense prejudicial on its face. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1992); *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990). We find nothing in the record whereby Argee contends that Solis' Motion For Leave to File Trial Amendment operated as a surprise or prejudice upon Argee.

■ A trial court is required to submit a jury issue if there is any evidence introduced with respect to that issue and the issue is supported by the pleadings. *See Huckaby v. Henderson,* 635 S.W.2d at 131. Argee's contention that the trial court properly denied the fraud issue relating to the Woodville Project must be reviewed under the "no evidence" standard. We must review the evidence in the light most favorable to Solis and dismiss all evidence and inferences to the contrary. *See Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). A trial court may not refuse to submit the issue to the jury if any evidence exists in support of the issue. *See Ethicon, Inc. v. Parten,* 520 S.W.2d at 531. The trial court's refusal to submit an issue supported by the evidence and the pleadings constitutes reversible error. *Southwestern Bell Telephone Co. v. Thomas,* 554 S.W.2d 672 (Tex.1977). Although this Court may question Solis' ability to show actual damages relating to his fraud claim on the Woodville Project, we nevertheless find that the trial court denied Solis his rightful opportunity. We sustain cross-appellant's points of error nineteen, twenty, and twenty-one and remand these questions to the trial court for trial on the merits.

Cross-appellant's points of error twenty-two, twenty-three and twenty-four constitute attacks upon the amount of the judgment entered by the trial court. The trial court rendered judgment against Argee Corporation in the sum of $169,081.00, representing $125,830.00 in actual damages, and $43,251.00

in prejudgment interest. Solis contends that the trial court erred in failing to render and enter judgment providing that Solis recover judgment against Argee for $479,559.00 in actual damages, prejudgment interest at the rate of ten percent (10%) per annum, compounded annually on actual damages, and $168,000.00 in attorneys' fees, and in failing to provide that Solis recover judgment against Seaboard, jointly and severally with Argee for $95,253.00 in actual damages, prejudgment interest at the rate of ten percent (10%) per annum, compounded annually from November 6, 1989, and $168,000.00 in attorneys' fees. We sustain cross-point of error twenty-two.

Cross-point of error twenty-three is sustained in part and judgment is rendered that Solis recover the sum of $479,559.00 against Argee in actual damages and that Solis recover judgment against Seaboard, jointly and severally with Argee for actual damages in the sum of $95,253.00. We overrule that portion of Solis' points of error twenty-three and twenty-four which contend for prejudgment interest at the rate of ten percent (10%) per annum, compounded annually. We render judgment that prejudgment interest shall run at the rate of six percent (6%) per annum on the $479,559.00 judgment against Argee and the judgment against Seaboard, jointly and severally with Argee, in the amount of $95,253.00 shall also run at the rate of six percent (6%) per annum from November 6, 1989, to date of the trial court's judgment.

## CONCLUSION

The judgment of the trial court is affirmed except as follows: The trial court judgment is vacated and modified in the following respects: 1) to award damages to Solis against Argee in the amount of $174,886.00 for additional expenses relating to the Dayton and Snyder Projects; 2) to award damages to Solis against Argee in the amount of $150,000.00 for injury to credit reputation arising from breach of the Dayton Subcontract; 3) to delete the offset of $28,853.00 granted to Argee with respect to actual damages awarded Solis on the Dayton Project; 4) to award prejudgment interest at the rate of six per-

cent (6%) per annum on actual damages against Argee; 5) to award damages of $95,253.00, plus prejudgment interest at the rate of six percent (6%) per annum to Solis against Seaboard, jointly and severally, with Argee; and 6) to award attorneys' fees of $168,000.00 for preparation of trial, trial, and the additional sums as herein stated for the respective appellate levels. We reverse and remand for new trial on the merits as to: 1) Solis' cause of action for wrongful conversion of equipment on the Dayton and Woodville Projects and, 2) Solis' cause of action for fraud relating to the Woodville contract.

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.